THOMAS STARIN, Plaintiff in error, v. THE PEOPLE, Defendants in error.

45  333
126  663

The prisoner was indicted, as accessory before the fact, to burglary in the first degree, charged to have been committed by several principals, at the time of the prisoner's trial; only one of whom had been convicted.— *Held*, that in such a case, the accessory must be tried and convicted as accessory to the convicted principal only; in the same manner as if the convicted principal only was named in the indictment.

If the court, in a criminal case, entertains and decides a material legal question, fundamental in its character, the decision of which is excepted to before impanneling the jury, and the parties act upon it, such decision should be deemed incorporated into the proceedings on the trial; or, in other words, a part of the trial itself. In such a case, where an objection is taken at the time, it is unnecessary to renew the objection afterward.

(Re-argued March 22d; decided April 11th, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court, in the fourth judicial district, affirming a conviction at the Montgomery Oyer and Terminer.

Starin and Fonda were indicted in Montgomery county, in May, 1866, as accessories before the fact, to burglary in the first degree, and larceny, committed by Disbrow, and John, Charles and William Van Voast, as principals. Disbrow pleaded guilty, and was sentenced to ten years imprisonment; Fonda was tried and convicted, sentenced for ten years, and after serving two years, was pardoned; William Van Voast turned State's evidence, and has not been tried; Charles and John Van Voast are fugitives from justice; Starin was tried and convicted in May, 1867. A bill of exceptions was made in his behalf, and the case was reviewed in the Supreme Court, on certiorari, where the conviction was affirmed and the cause remitted to the Oyer and Terminer. In October, 1868, Starin was sentenced in the Oyer and Terminer, and the cause was then taken to the Supreme Court, by writ of error, where the judgment of the Oyer and Terminer was affirmed.

The cause was then brought into this court, by writ of error, where it has been since January, 1869. It was argued in this court in March, 1869, and, after being held over two terms, the court, in December, 1869, ordered a re-argument.

*D. S. Morrel,* for the people. Where several persons unite in the commission of a crime, some of whom are principals and others accessories, it is the most usual way to indict and try them together. (Wharton's Crim. Law, § 138; Russell on Crimes, 384; 1 Chitty Crim. Law., 421.) Starin could be tried as soon as one of his principals was convicted. (1 Chitty Crim. Law, 421; Russell on Crimes, 38; Wharton's Crim. Law, 136,; Barb. Crim Law, 287; *Com.* v. *Knapp,* 10 Pick., 247; *People* v. *Baron,* 1 Park., 246.) A point must be raised in a criminal case in the same manner as in a civil one. (*Dore* v. *People,* 5 Park., 390; *Stafford* v. *People,* 1 Park., 474; *People* v. *Stockenham,* 1 Park., 424.) Whatever meaning is given to the words of the statute will be given to them in a pleading founded upon it. (*Mason* v. *People,* 26 N. Y., 200; *Cole* v. *Jessup,* 10 N. Y., 103, 104.) "Burglariously did break" implies a forcible breaking. (Arch. Crim. Plea, 268, and note.) Unlatching a door which is latched is sufficient breaking to constitute burglary. (Wharton's Crim. Law, §§ 15, 38.) William Van Voast was properly allowed to be sworn as a witness for the prosecution. (*People* v. *Wixon,* 5 Park., 119; *People* v. *Whipple,* 9 Cow., 709.) If the Appellate Court is satisfied that the party could not have been injured by the admission of evidence, technically inadmissible, it is not bound to grant a new trial. (*People* v. *Gonzales,* 35 N. Y., 59, 60; *Forrest* v. *Forrest,* 25 N. Y., 501; *Shorter* v. *People,* 2 N. Y., 193.)

*W. A. Beach,* for plaintiff in error.

Church, Ch. J. The plaintiff in error was indicted as accessory before the fact to the crime of burglary in the first degree, committed by four principals named in the indict-

ment.   At the Montgomery Oyer and Terminer, held on the 13th day of May, 1867 (the prisoner having been arraigned and plead not guilty to the indictment), the district attorney moved the trial of the prisoner, who, by his counsel, objected to proceeding with the trial until after the conviction of all the principals named in the indictment.   The district attorney then admitted that but one of the principals had been convicted, that one other was then in jail, and the other two had not been arrested.   The objection was then overruled and the decision excepted to.

Several other objections were raised and decided, but one of which it is necessary to notice, and as to that the record is as follows: The prisoner, by his counsel, then objected to being tried as accessory to any other principal than the one who was convicted; the court overruled the objection and the prisoner's counsel then and there duly excepted.

The jury were then impanneled and the trial proceeded. If this exception is available to the prisoner, it is fatal to the conviction and judgment.   An accessory may be tried jointly with the principal, but the jury must first agree upon the guilt of the principal, while an acquittal of the principal necessarily acquits the accessory.   (Wharton's Crim. Law, § 138.)   If the accessory is not tried with the principal, he cannot be tried until the principal has been tried and convicted.   (*People* v. *Bacon*, 1 Park R., 246.)   Formerly, if a man was indicted as accessory in the same crime to two or more persons, he could not have been arraigned until all the principals were convicted and attainted.   (Hale's Pleas of the Crown, 623, chap. 47.)   And in order to try an accessory when only one of several principals had been convicted, it was necessary to indict and arraign him as accessory to that one only.   (Id.)

But the modern decisions have somewhat modified this rule, and the weight of authority now is, that an accessory may be tried and convicted when one only of several principals named in the indictment has been convicted.   (1 Russell

on Crimes, 38; Bishop's Crim. Law, § 611; *Commonwealth* v. *Knapp,* 10 Pick., 477.)

But it is well settled that in such a case the accessory must be tried and convicted as accessory to the convicted principal only in the same manner as though the convicted principal only was named in the indictment. The authorities are uniform on this subject, and I have been unable to find any decision against this position. (*Strops* v. *Com.,* 7 Serg. and R., 491; 3 Greenl. Ev., § 52; *People* v. *Bacon,* 1 Park., 246; 1 Bishop's Crim. Law, 468.)

This necessarily results from the rule that the guilt of the principal can only be shown by a judicial trial and conviction, and even then it is not conclusive against the accessory. (10 Pick., *supra.*) The association of unconvicted principals with a convicted principal in the indictment does not authorize the trial of an accessory to any but the one convicted any more than it would if those not convicted had not been named. The decision of the court, therefore, overruling the objection of the prisoner to being tried as accessory to any but the convicted principal, was clearly erroneous.

This objection is attempted to be answered on two grounds, 1st. It is claimed to be ill-timed and not made " upon the trial " of the indictment. Upon the former argument of the case before the late Court of Appeals, the record did not show whether this exception was taken before or after the jury were impanneled, and some of the members of the court regarded that circumstance as controlling in determining whether it could be available to the prisoner in this court. Since the reargument was ordered the record has been amended so as to show that the objection was made just prior to the impanneling of the jury. Ordinarily the trial in civil and criminal cases commences with impanneling the jury, and questions raised before that time are of a preliminary nature or not entertained; but there is no such technical rule on the subject as precludes us from adhering to the substance rather than the form of proceedings in courts, brought here for review.

By the record it appears that the trial of the indictment was moved and the court determined that the trial must proceed. The prisoner's counsel then raised various questions, and among others the one under consideration. The court entertained these questions not only, but received evidence by admissions of the district attorney of facts to enable it to pass upon the questions intelligently and appropriately. The point we are now considering was not preliminary in its nature, but one proper to be raised and determined upon the trial; and, although the court might have declined to entertain it at that stage of the proceedings, it was not improper to settle it in advance. It was fundamental in its character, and would necessarily give direction to the whole course of the trial (the evidence to be given and the verdict to be rendered), and we cannot say that it might not influence the composition of the jury itself and the exercise of the right of challenge. The facts admitted by the district attorney were only proper to be proved on the trial, and when received they were as much a part of the evidence on the trial as any other. It is unnecessary to say that in order to avail himself of the exception the prisoner had a strict right to take it at the time he did. It is sufficient that the court entertained the question and passed upon its merits, as upon the trial, and that the parties so regarded it and acted upon it.

It is too late to say that the exception was not taken *upon the trial.* If a court in a civil or criminal case entertains and decides material legal questions which belong to and are properly a part of the trial before impanneling the jury, and the parties act upon them, such decisions should be deemed incorporated into the proceedings on the trial, or in other words a part of the trial itself. Otherwise the greatest injustice might be done to parties relying upon the faith of such exceptions. Life, liberty and property might be unjustly jeoparded by adherence to such narrow technicalities. It was unnecessary to renew the objection afterward.

The parties had a right to rely upon the decision, as the court had made it. The time and manner of raising ques-

tions and the general conduct of the trial of causes are necessarily, to a considerable extent, within the discretion of the court, and in reviewing judicial proceedings regard should be had to the substance of what has been done rather than the manner of doing it, especially when material, rights and interests are involved. The exception is just as valid and effectual under the circumstances of this case immediately before as if taken immediately after the jury were impanneled, or at any later period of the trial. The other ground for avoiding the force of the objection is that the prisoner was not injured by the decision of the court.

An examination of the case shows that evidence was given and received in accordance with this ruling. One of the unconvicted principals was called as a witness by the prosecution, and testified to his own guilt not only, but also to the complicity of the prisoner with him as a principal disconnected from the convicted principal. An objection, it is true, might have been interposed to this evidence on behalf of the prisoner, but it was not necessary to do so, because it was admissible under the previous decision of the court. One exception is sufficient. A party is not required to raise an objection every time an occasion is presented, after the court has ruled definitely upon the point.

The evidence implicated the prisoner in the transaction, and was therefore injurious to him upon the trial. So as to the charge, although not set forth in the case, it is presumed (if it contained anything upon this point) that it was in accordance with the previous ruling. It is said that the motion made by the prisoner's counsel at the close of the evidence is inconsistent with this presumption. I do not so regard it. That motion was to discharge the prisoner, on the ground that none of the principals had been legally convicted, as the plea of guilty of the convicted principal was not a legal conviction. It sought to take away the fact upon which the original decision was apparently based, that one convicted principal was sufficient to authorize the trial of the

prisoner as accessory to that one, with others who had not been convicted.

This view of the charge is very much strengthened by the verdict of the jury, which accorded with it and with the original decision of the court. The verdict was that the prisoner was guilty of the offence wherewith he was charged in the indictment. In 7 Serg. & R. (*supra*), the court set aside the judgment in a similar case, for the error of the jury in rendering such a verdict, although no exception was taken. DUNCAN, J., said : " The verdict here finds the prisoner guilty as accessory to all. The jury could not inquire into the guilt of those who had not pleaded, and yet they find them guilty as to these."

We have in this case a distinct decision of the court at the commencement of the trial, in effect, that the prisoner could be tried as accessory to the crime of those who had not been convicted as well as of the one who had ; we see that evidence was received which, but for that ruling, would have been incompetent, and that was followed by a corresponding verdict of the jury. It is impossible from this record to arrive at any other conclusion than that the erroneous decision at the commencement pervaded the whole trial and verdict. Casler, a witness for the prosecution, was asked, on cross-examination, the following question: " Did you state before the grand jury, in your testimony, in substance, that the object you had in implicating Starin in the robbery, was that he went back on you for $1,500 for five men, and you made up your mind that you would lead him along until you had an opportunity to retaliate ?" He answered, " I don't know whether I did or not."

The prisoner's counsel afterward called the clerk of the grand jury, who stated that Casler testified before that body that " Starin and him put in five men, and made $1,500, and it was to be divided, and Starin would not divide it, and he meant to lead Starin along and retaliate on him." The record then states that " the people proposed to read the remainder of Casler's evidence before the grand jury which

was not read by the prisoner's counsel, *relating to Starin and the Hudson robbery.*" This was objected to by the prisoner's counsel, the objection was overruled and the prisoner's counsel excepted. The witness then stated all the evidence given by Casler before the grand jury, none of which related to the motives which influenced him in implicating the prisoner, but conversations and facts tending to implicate him in the Hudson robbery, and which he had, substantially, before testified to on this trial. The statement of Casler before the grand jury was competent as contradicting evidence, as it tended to show that he was actuated by motives of revenge against the prisoner. (*Atwood* v. *Wilton*, 7 Conn. R., 66.) The remainder of his evidence before the grand jury did not relate to his motives, or the feelings by which he was actuated, but to the facts bearing upon the prisoner's guilt, and was, therefore, incompetent.

The prosecution were entitled to any statement which would tend to explain or qualify that which had been called out, but were not entitled to statements upon other subjects. (*Rouse* v. *Whited*, 25 N. Y., 170.) The declaration of ill will against the prisoner was not qualified or explained by the relation of facts and confessions tending to prove the prisoner's guilt. It is urged, however, that the objection was too general, and that the prisoner's counsel should have interposed an objection when it was seen that the evidence was incompetent. The answer to this is, that the question itself implied that the statement related to a different subject from that inquired about. The prisoner's counsel inquired what Casler said about the motives and feelings which actuated him in his action against the prisoner; the prosecution asked for all that Casler stated about Starin in connection with the Hudson robbery. It was not claimed or intimated that he said anything more than had been proven on the subject of his ill will, and the proposition was to call out all of his evidence upon the merits. The evidence received was precisely that called for and no other, and was incompetent. But it is said that the prisoner was not injured by this evi-

dence.   The rule is, that if it can be seen that the prisoner
could not have been injured, a new trial will not be granted
for the reception of evidence technically inadmissible; on
the other hand, if he might have been prejudiced, the admis-
sion of improper evidence is error.   (30 N. Y., 59.)   The
witness, Casler, was sought to be impeached in various ways,
by showing that he was actuated by revenge, by proving con-
tradictory statements, by evidence of general bad character,
and by implicating him in an attempt to commit a similar
robbery; and we cannot say that this statement might not
have been used to strengthen his credit before the jury, by
showing that he had made consistent statements about the
transaction at different and distant periods.   Such evidence
was not proper for the purpose of corroborating the witness,
and if it could have been used for that purpose, we cannot
say that it was not so used to the prejudice of the prisoner.

The judgment and conviction must be reversed, and a new
trial ordered.

ALLEN, GROVER, RAPALLO and ANDREWS, JJ., concur.
FOLGER, J., concurred on the last ground, PECKHAM, J.,
dissented.

Judgment reversed, new trial ordered.