STATE OF SOUTH DAKOTA, Respondent, v. BACHELOR, Appellant

(291 N. W. 738.)

(File No. 8275. Opinion filed April 27, 1940.)

Rehearing Denied June 20, 1940.

**Tom Kirby,** of Sioux Falls, and **W. J. Hooper,** of Gregory, for Defendant-Appellant.

**Leo A. Temmey,** Atty. Gen., and **Charles P. Warren,** Asst. Atty. Gen., for Plaintiff-Respondent.

POLLEY, J.   This appeal is from a judgment of conviction of the crime of grand larceny; appellant being charged with being an accessory before the fact.   The property stolen was a two year old heifer alleged to have been the property of one Birthol B. Brown.   The actual taking of said heifer was by one James D. Cole.   The information upon which appellant was tried originally contained three counts, but the trial court sustained a demurrer to count 3 and the state dismissed count 2.   The charging part of count 1 upon which appellant was tried reads as follows:

"Comes now John Geo. Day, the duly elected, qualified and acting State's Attorney and complains and charges that on or about the 10th day of October, A.D., 1937 and before the filing of this information, the above named defendant William D. Bachelor committed the crime and offense of grand larceny within the aforesaid County and State and in the manner and form following to-wit:

" 'That one James D. Cole did knowingly, unlawfully and feloniously within the County of Bennett and in the State of South Dakota on or about the 10th day of October, A.D., 1937 did by fraud and stealth take, steal and carry away one two year old heifer, which said heifer was then and there the property of one Birthol B. Brown; said taking by the said James D. Cole being then and there with the unlawful and felonious intent to deprive the lawful owner thereof and the said defendant William D. Bachelor did then and there knowingly, unlawfully and feloniously aid and abet the said James D. Cole in the commission of the aforesaid larceny.' * * *."

To this information the defendant Cole pleaded guilty and was sentenced to a term in the penitentiary; he then acted as a witness for the state at the trial of appellant.

Cole testified that from time to time since as far back as 1932 he and appellant had made a practice of stealing and butchering cattle belonging to said Brown; that Brown had a cattle ranch consisting of several thousand acres in Bennett county, a short distance north of the Nebraska state line; that appellant had a cattle ranch of several thousand acres adjoining the ranch of the said Brown on the south, but extending several miles over the state line into the state of Nebraska; that the ranch buildings on appellant's said ranch were in Cherry county some four miles south of the Nebraska state line. Appellant and his family lived in the town of Merriman in Nebraska some five or six miles south of said ranch buildings, but generally some member of his family or employees stayed on the ranch. Cole lived in Merriman and had worked at odd jobs for appellant off and on for the past five or six years.

About a week prior to the 9th day of October, 1937, Cole and appellant met and had a conversation on a street in Merriman. During this conversation appellant said that he (appellant) was "getting beef hungry. That the weather was getting cool and that they might as well have some beef." To this suggestion Cole replied "Okay," but nothing more appears to have been said just then. On the afternoon of the following Saturday, October 9, Cole and appellant again met in Merriman when appellant told Cole that he had a beef spotted and asked Cole if he could go out that night. Cole at first said no, that he was busy and could not go that night, but after some further talk, again said "Okay." Appellant told Cole that the beef he had in mind was near the "old buildings" on Brown's ranch. By "old buildings" appellant meant the foundations of some buildings that were no longer there. These so-called "old buildings" were in Brown's pasture at a point about 4½ miles north of the Nebraska state line. Cole was familiar with the place so designated by appellant.

After dark that night Cole rode out to appellant's ranch

buildings. He found Orval Winters, a step-son of appellant, at the house. Cole put his horse in the barn and went into the house, smoked a cigarette, ate a lunch, and went to bed. He arose at daylight the following morning, October 10, 1937. He had some talk with Orval Winters, in which Cole said he was going out to hunt coyotes, then got on his horse and rode up north through appellant's pasture until he came to a gate leading into Brown's pasture. This was about 5 miles north of appellant's ranchhouse and on the South Dakota side of the state line. There he found the "old buildings" mentioned by appellant and "quite a few cattle. They were Birthol Brown's—had Birthol Brown's brand." He then rode around a bunch of these cattle,— eleven head in all,—and started them south. He drove them south some 4½ miles across Brown's pasture; then across the South Dakota boundary line through the gate into appellant's pasture, then on across appellant's pasture until he came to the gate leading into appellant's meadow. There he found appellant and the said Orval Winters waiting in a car. Appellant designated a certain "stubby horned" two year old heifer which he said would be a good one. This heifer was branded "Bar Cross" on the left shoulder and side, which was Birthol Brown's brand. Cole then separated this particular heifer from the other cattle he had driven from Brown's pasture and drove her through the gate, into and across appellant's meadow, and into a corral near appellant's ranch buildings. It was then about 10 or 10:30 o'clock. Cole went into the house and washed and had some breakfast. Then they (Cole and appellant) went out to the corral and proceeded to kill and butcher the two year old heifer Cole had driven from Brown's pasture. Cole testified that in butchering said animal he worked on the rear end, while appellant worked on the head end; that he (Cole) skinned the rear end and cut off the hind feet. Appellant skinned the front end. He sawed off the horns and cut off the head and the front feet. He cut off the ears and cut the brand out of the hide. They then put the head, horns, ears and feet in a sack, and put the hide in another sack. These sacks were then thrown into the rear portion

of appellant's car and neither of said sacks nor any part of the contents thereof were ever seen again.

Cole testified that he did not know what appellant did with the piece of hide that had the brand on, but that appellant said he would burn it. They then divided the meat; appellant taking one-half which he hung in his icehouse. The other half was pulled up in the tree where it was hanging, and where it remained until after dark that night when Cole came out from Merriman; he took the meat down and took it to Merriman, in an automobile he borrowed from a man in Merriman, and sold it to a restaurant keeper in that town.

For his defense appellant denied having made any arrangements with Cole to steal the heifer that was butchered; denied that he met Cole at the gate leading into his meadow as Cole was bringing the cattle down from Brown's pasture; testified that he did butcher a two year old heifer at the very time and place that Cole said he and appellant had butchered Brown's heifer that morning. He testified that Cole did get half of the animal he butchered but that he (appellant) sold the beef to Cole in payment of money he owed Cole for work he had performed for appellant.

If this were true, then Cole is in the very anomalous position of having pleaded guilty to the commission of a crime he said he had committed, himself, but which crime was never committed at all. Appellant testified that the heifer he butchered was a red heifer with a white face and a brown ring around her left eye, that she never had any horns, and that she was branded "Bar T" on the left side which was appellant's brand.

Whether appellant was telling the truth was a question for the jury, but the court told the jury that the offense which Cole confessed he had committed was in fact the same offense upon which the charge against the appellant was being made. The court then further charged the jury that the offense to which Cole pleaded guilty had been judicially determined by the court and that the jury should adopt the judgment of the court as proof of that allegation, except as to the binding effect upon the appellant, which is one of the

material allegations in the information. These instructions told the jury that Cole stole the animal that was butchered by appellant and that that fact was binding upon the jury, whereas, it was the theory of appellant's defense that the animal he butchered at that time and place had not been stolen but was one of his own animals. As to appellant, neither the information nor the judgment of Cole's conviction was competent evidence of any fact.

■■ At the trial of appellant the court, over proper objection by appellant, admitted in evidence the original information, Cole's plea of guilty, and the judgment of conviction of Cole. The reception of these instruments in evidence was error. The court over proper objection by appellant charged the jury as follows:

"In this case the undisputed evidence shows that the witness James D. Cole was heretofore informed against in the Circuit Court of Bennett County, South Dakota, charged with larceny, which was in fact the same offense upon which the charge against the defendant is now being made.

"It further appears from the undisputed evidence that the said James D. Cole entered a plea of guilty to said charge, and judgment and sentence was pronounced against him by the Court, which is sufficient proof of that part of the information wherein it is alleged in the information in substance that on or about the 10th day of October, 1937, in the County of Bennett, and State of South Dakota, the said James D. Cole, did, by fraud and stealth, take, steal, and carry away one two·year old heifer, the property of Birthol B. Brown, with intent to deprive the owner Brown thereof."

"The jury are not required to examine any evidence in the case for the purpose of determining the guilt of James D. Cole because that has been judicially determined by the Court, and the jury should adopt the judgment of the Court as proof of that allegation except as to its binding effect upon the defendant, which you will notice is one of the material allegations of the information now under the consideration of the jury."

The giving of these instructions was error.

Prior to the abrogation of the distinction, SDC 34.0504, between a principal and accessory to the commission of a crime it was necessary in the prosecution of the accessory to prove the commission of the crime, and proof of the commission of the crime by the principal was prima facie evidence of the guilt of the principal. Levy v. People, 80 N. Y. 327.

■ SDC 34.0504 reads as follows: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must be prosecuted, tried, and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment against his principal."

Since the enactment of the above statute, to charge a party with being an accessory before the fact charges him with being a principal.

SDC 34.0505 reads as follows: "An accessory to the commission of a felony may be prosecuted, tried, and punished, though the principal be neither prosecuted nor tried, and though the principal may have been acquitted."

■■ The effect of these two sections of the Code is to do away with the necessity, in the prosecution, of any reference to a defendant as an accessory. A party who aids and abets another in the commission of a criminal offense is himself a principal in the Commission of such offense and is to be tried the same as though he were actually a principal and the record of the conviction of the principal, either by verdict or plea of guilty, is not evidence, prima facie, or otherwise of the guilt of an accessory.

"The plea of guilty by, or the conviction of one person of the commission of a crime, or a record of such plea, does not establish the fact that such crime was committed as against any other person, and is not admissible as tending to prove

such fact." State v. Gargano, 99 Conn. 103, 121 A. 657, 659. See, also, Rex v. Turner, 1 Moody 347, (1 Crown Cases p. 1298); State v. Justesen, 35 Utah 105, 99 P. 456; State v. Bowker, 26 Or. 309, 38 P. 124. It is necessary for the state to prove the whole case against any accused, in spite of a confession by plea of guilty by one jointly charged with the accused. People v. Stevens, 47 Mich. 411, 11 N. W. 220.

This phase of the case was discussed by the Court of Appeals of New York in People v. Kief, 126 N. Y. 661, 27 N. E. 556, 557, 4 Silv. Cit. App. 448. Defendants were jointly indicted for murder. One of them was tried and acquitted; the other defendant was tried and convicted. On appeal he predicated error upon the refusal of the trial court to receive in evidence the record of the acquittal of the other defendant, but the Court of Appeals sustained the ruling of the trial court. In discussing that phase of the case the Court of Appeals use the following language: "Before the enactment of section 29 of the Penal Code, where a party was indicted as accessory before the fact to a felony, for which another had been indicted as principal, the trial and conviction of the principal were essential to the prosecution of the charge against the accessory. Baron v. People, 1 Park. Cr. R. 246; Starin v. People, 45 N. Y. 333. The record of the conviction of the principal was therefore offered in evidence as a part of the People's case upon the trial of the accessory. It was admitted simply as establishing the fact of a conviction had. Upon the question of guilt, whether of principal or of accessory, the record concluded nothing; for the defendant was not a party to it, and he was at liberty to dispute and disprove it. But with the change effected by the Penal Code the distinction between principal and accessory disappeared, and thence forward he who aided, abetted, or counseled in the commission of a crime became equally guilty with him who committed it, and could be indicted, tried, and convicted as a principal. If it is immaterial, therefore, upon the question of his guilt, whether a party, engaged in the commission of a felony, directly committed the crime alleged, or only abetted in its commission, it must be quite immaterial whether one jointly indicted with him

for the offense has been acquitted or not. The question of the one defendant's guilt cannot turn upon the establishment of the other's guilt; it is an independent issue, to be tried out alone. Because of the changed conditions brought about by the Penal Code provision cited, reasoning upon the previous practice is useless. At present a defendant must go to the jury upon such competent and relevant evidence as tends to prove his guilt, and quite irrespectively of the extrinsic and irrelevant fact that one or more defendants, jointly charged as accomplices, have been acquitted upon their separate trials. The indictment charged the defendant with the killing of the deceased. The evidence tended to establish that there were opportunities for administering the arsenic to the deceased by this defendant, as well as that he may have counseled and abetted Carrie Howard in administering it. If he administered it himself, then the record of Carrie's acquittal was, obviously, immaterial. If he abetted her in poisoning her husband, then the Penal Code makes him as guilty as though he directly did the poisoning. Now, the fact that Carrie Howard had been acquitted or convicted could not legally prove anything for or against this defendant, for he was not a party to that record. * * *."

■ It is the contention of appellant that the allegation contained in the information: "And that the said William D. Bachelor did then and there knowingly, unlawfully and feloniously aid and abet the said James D. Cole in the commission of 'the said larceny," does not sufficiently describe the manner in which appellant aided and abetted Cole in committing said larceny to support a prosecution of appellant for the offense charged. Appellant appears to have fully understood the charge and experienced no difficulty in preparing his defense. He does not claim to have been prejudiced in any manner because of the form or contents of the information. If there is error it is error without prejudice and is not a ground for reversal. SDC 34.3001; State v. Stewart, 37 S. D. 263, 157 N. W. 1046.

By the provisions of SDC 34.0504 the distinction between principals and accessories before the fact is abrogated and all persons concerned with the commission of a felony,

whether they directly commit the act constituting the offense or aid or abet in its commission, though not present, must be prosecuted and punished as principals, and no additional facts need be alleged in any indictment or information against such accessory than are required against his principal. SDC 13.0203. And by SDC 34.0505, an accessory to the commission of a felony may be prosecuted, tried and punished, though the principal be neither prosecuted nor tried, and though the principal may have been acquitted. Under the provisions of thesè two sections of the Code, charging the appellant with being an accessory charges him with being a principal, and no additional facts need be alleged or shown. People v. Rozelle, 78 Cal. 84, 20 P. 36, and cases cited.

At the trial the court received, over proper objection, testimony to show that Cole and appellant had been engaged in stealing and butchering Brown's cattle since as far back as the fall of 1932; that before any cattle had been stolen appellant and Cole entered into an arrangement between themselves whereby they were to steal and butcher Brown's cattle; that they were to divide the meat equally between themselves, and that Cole should have the use of appellant's automobile in disposing of his share of the meat. They operated under this arrangement for two or three falls when appellant, for some reason not disclosed by the evidence, decided not to permit his automobile to be longer used by Cole for the disposition and delivery of his share of the stolen animals. This does not seem to have interfered in any way with their operations, however, except to compel Cole to find other means of transportation of his share of the meat. Error is predicated upon the admission of this evidence.

■■ The rule, of course, is well established that on the trial of a person charged with crime the evidence must be limited to proof of that particular crime; but there are exceptions to that rule. Where it is necessary to show motive, intent, system or general scheme, testimony of other similar offenses claimed to have been committed pursuant to such system or scheme by the person on trial is admis-

sible. According to the testimony of Cole he and the appellant had been engaged in stealing and butchering Brown's cattle since entering into said arrangement, which operations were carried on pursuant to the understanding entered into between themselves back in the fall of 1932. It is not shown that any prejudice to the rights of the appellant resulted from this evidence and the error, if any, is not reversible. State v. Phelps, 5 S. D. 480, 59 N. W. 471; People v. Grutz, 212 N. Y. 72, 105 N. E. 843, L.R.A. 1915D, 229, Ann. Cas. 1915D, 167; State v. Wolfe, 64 S. D. 178, 266 N. W. 116, 104 A.L.R. 464.

■ During the trial Birthol Brown, the complaining witness, testified for the state. On cross examination he was asked by appellant's counsel if he did not, at a certain time and place, and in reply to. a question by some person (whose identity is not disclosed) as to how the Bachelor case was coming on, say in effect that he was either going to send Bachelor to the penitentiary or bust him so that he would not have anything. The Court sustained an objection to this question and error is predicated upon such ruling. Excluding the answer to this question was error. If the witness said what the question implies that he did say it might be regarded by the jury as showing interest, bias or prejudice in the result of the trial that might influence the witness and affect his credibility.

■ At the trial Orval Winters, the step-son of appellant, above mentioned, testified as a witness for appellant. Foundation for impeachment was laid and after he left the stand the state called as witnesses E. L. Davis, Otho Kime and Allen Ward. These witnesses testified that they had talked with Orval Winters shortly after the commission of the crime and that, at that time, Orval Winters narrated certain facts relative to the crime that were directly contrary to his testimony while on the witness stand. According to the testimony of Cole, Orval Winters was an eyewitness to every act that transpired from the time he and appellant met Cole at the gate as Cole was driving the heifer they afterwards butchered down from Brown's pasture until the butchering was completed and the meat divided. He

narrated the transaction to these witnesses just as Cole had described it when he was on the stand. After he (Winters) left the stand the three parties, Davis, Kime and· Ward, went upon the stand and testified that he (Winters) had told them the facts indicated by the question put to him (Winters). This testimony, of course, was for the sole purpose of impeaching Winters and in reference to such testimony the court instructed the jury as follows: "Some evidence was given by E. L. Davis and by Otho Kime and Allen Ward of certain statements made to them by Orval Winters in the absence of the defendant. This evidence was admitted as a test of the credibility of the witness Orval Winters but was hearsay and not binding on the defendant at all except as to the effect it might have on the evidence of the witness Orval Winters in the case."

Appellant predicates error upon this instruction as given by the court and requested the addition of the following paragraph to the instruction as so given: "* * * This evidence of statements claimed to have been made by this witness, Orval Winters, at that time was competent only as bearing on the credibility of the witness, Orval Winters, and cannot be used to prove or disprove any fact touching the issues to be determined by you."

While we do not think that either the instruction as given by the court or the refusal of the requested paragraph constitute reversible error, we do think that the instruction would have been clearer and more easily understood by the jury had it been given as requested by appellant and in case of a retrial the instruction should be given as requested by the appellant. The same rule applies to the testimony of E. M. McMullen relating to an alleged conversation had with Orin Bachelor on October 14, 1937, and also to the testimony of Carl Schuelke as to a conversation claimed to have been had at Merriman, Nebraska, with Alfred W. Prudens and was admitted solely as bearing on the credibility of the witness Prudens and cannot be used to prove or disprove any fact touching the issues to be determined in the case.

Under the testimony of Cole he was an accomplice

of appellant in the larceny of the heifer involved and it was necessary that he be corroborated by other evidence tending to connect appellant with the crime. SDC 34.3636 reads as follows: "Accomplice: corroboration testimony required for conviction. A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

Cole testified that in bringing the eleven head of cattle mentioned in his testimony from where he found them in Brown's pasture, he was obliged to drive said cattle through three different gates. He testified that in going through each of these gates he got off his horse, opened the gate, drove the cattle through and then closed the gates. He said that he was wearing on his feet what are commonly known as "cowboy boots," that is, high-heeled boots. He further testified that in closing one of these gates after he had driven the cattle through, he broke the gate stick and that he had some difficulty in fastening the gate; that as the cattle passed through these gates they left tracks in the gateway showing that a few head of cattle had passed through such gate heading south. He also testified that his horse left tracks and that he left tracks himself showing the prints of his high heeled boots.

At least three witnesses examined these gates and gateways within two days after the commission of the crime. They testified that they found fresh tracks of a few head of cattle passing southward through each one of these gates; they also testified that they found the horse tracks and the prints of Cole's high-heeled boots just as he had described them in his testimony. They also testified that they found the broken gate stick just as Cole described it in his testimony. It is true that one of the witnesses for appellant said that he, himself, broke this gate stick a few days prior to the commission of the crime; but it is not so material who broke the gate stick. They found it broken just as Cole had described it, and the testimony of these witnesses was highly

corroborative of Cole's testimony touching the acts described by him in moving these cattle from Brown's pasture to appellant's corral. The testimony of the appellant relative to the time, place and manner of killing and butchering a two year old heifer on the morning of October 10 strongly corroborated the testimony of Cole. Indeed, the principal difference between the testimony of Cole and appellant is that Cole said the animal they butchered was a white-faced stubby horned two year old heifer branded Bar Cross on the left shoulder and side, while appellant described the animal he butchered as a white faced two year old heifer with a brown ring around her left eye, but without any horns and branded Bar T.

The whole case resolves itself into a question of veracity. If the heifer appellant and Cole butchered on the morning of October 10 was branded Bar Cross as Cole said she was, then appellant was guilty; but on the other hand, if said heifer was branded Bar T as appellant said she was, then no crime was committed and appellant was not guilty.

We think the evidence corroborating the testimony of Cole, the accomplice, was abundantly sufficient to supply the corroboration required by SDC 34.3636.

A careful examination and consideration of the remaining assignments fails to disclose prejudicial error and will not be considered in detail.

The judgment and order appealed from are reversed and a new trial awarded.

All the Judges concur.