STATE, Respondent v. LONG et al., Appellants

(185 N.W.2d 472)

(File No. 10651.   Opinion filed March 26, 1971)

Rehearing denied April 29, 1971

**Leonard E. Andera,** Asst. Atty. Gen., Pierre, for plaintiff and respondent; **Gordon Mydland,** Atty. Gen., was on the brief.

**Robert A. Warder of Gunderson, Farrar, Aldrich & Warder,** Rapid City, for defendants and appellants.

PER CURIAM.

During the night of March 11, 1968 the cabin of Forrest A. Koos located in the Spearfish Canyon was forcibly entered by the defendants Hale and Tisdale who removed therefrom a table model TV. Hale and Tisdale were accompanied by the third defendant, Long, who, while the evidence does not show an entry into the cabin by him, was the outside man of the trio. On March 12, 1968 the sheriff of Lawrence County, Richard McGrath, investigated the burglary and from tracks in the snow on the premises found that a "compact car" had been in the vicinity and also that the burglary had apparently been committed by three individuals, one of whom was wearing what appeared to be "football or track shoes". Also the individual wearing these shoes had waded through the water of a small creek in front of the place. The sheriff ad-

vised people in the canyon and a deputy sheriff who had a place of business there to be on the lookout for a red Volkswagon with Iowa plates, county number 77. The sheriff testified that an informer had given him this lead.

On March 13, 1968 the sheriff was notified by the deputy sheriff that a red Volkswagon had just left his place of business. Two deputy sheriffs, upon the orders of the sheriff, intercepted the red Volkswagon shortly thereafter, which was being operated by the defendant Long and of which he admitted ownership. Long was at that time accompanied by the defendant Tisdale and a third party who subsequently was absolved from any guilt. Long's car was searched by the deputies who found nothing and Long was told that the sheriff wanted to talk to him and his companions at the Spearfish police station. Long and the other two boys proceeded to that place.

Defendants were students at Black Hills State College and resided in a dormitory at that place. Long, shortly after arriving at the Spearfish police station, advised the sheriff that he had an appointment to have his picture taken with the college wrestling team. The sheriff sent Deputy Sheriff Palmer to ride with Long in Long's Volkswagon to the place where the picture was to be taken. In the meantime, the sheriff went to the dormitory with Tisdale. He asked Tisdale's permission to search his room which permission was granted. The sheriff made such search but found no evidence connecting Tisdale with the break-ins. Tisdale made no statements or admissions at the time.

Long returned to the dormitory accompanied by the deputy. The sheriff, with Long's permission, searched his room and found a pair of athletic shoes that seemed to fit the tracks that the sheriff had seen in the snow at the Koos cabin. The shoes were damp and showed signs of recently having been soaked in water. Sheriff McGrath's testimony and that of Long is somewhat conflicting as to the actual conversation that took place between them at that time. However, it is conceded that one of the warnings required by the rule in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and State v. Connors, 82 S.D. 489, 149 N.W.

2d 65, was not given.[1]  The defendant Long confessed to the break-in of this cabin and others in the canyon and admitted that he and his confederates had Koos' television set.  He also admitted that two other boys were involved but did not incriminate them by name.  The sheriff then asked Long to get the television set and the others who were involved and come down to the sheriff's office in Deadwood the next day as he wanted to talk to them.

On March 14, 1968, Long, Tisdale and Hale appeared at the sheriff's office with the television set and other items removed from the cabins and each signed a statement written in their own longhand as to the details of the burglaries.[2]  They left and returned to their dormitory.

Defendants were arrested on March 26, 1968 and charged with burglary in the third degree and grand larceny.  Preliminary hearing was held on May 3, 1968, and they were bound over to the circuit court for trial.

Before arraignment defendants filed a motion to suppress the statements and admissions made by them on the grounds they were not advised of any of their constitutional rights from the time they were stopped in the Spearfish Canyon up and through the time of their arrest as set out by the Supreme Court of the United States in Miranda v. Arizona, supra, and State v. Connors, supra.  The hearing was held in accordance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, and State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408.  The motion to suppress was denied.  The court in ruling on the motion held as follows:

---

1. The one omitted was that if he could not afford counsel one would be appointed for him at no expense to him.  It does not appear Long was indigent and he was represented by counsel throughout the proceedings.

2. This paper was headed Voluntary Statement; it had blanks which the person making it filled out with name, age, residence, etc. and contained all printed Miranda warnings.

"Let the record show that the Court views the statements as having been made prior to arrest, and that the statements which the defense claims were made when the defendants were not in custody as indicated under the Miranda Decision, and, in fact, the most damaging statement was made to the Sheriff within the defendant's (Long) own room, and there is no indication that he was under any duress, compulsion legally, and such statement is admissible. The Court further finds that the defendants were not under any duress or compulsion at the time when they in their own automobile brought some of the items stolen to the Sheriff's office. And that they were not subjected to any prolonged interrogation. And, quite to the contrary, were told they could write up their statements in their own handwriting without any questioning. And it appears that these boys were above average intelligence. At least they are college boys in their freshman year in college, and having been admitted to a college would be assumed to have above average intelligence. And were not subjected to any duress. Nor can it be said they didn't understand the gravity of the situation that they were facing. It appeared to the Court that, on the contrary, they were probably compelled mainly by their own consciences to get it off their mind. And I might say that they were entirely cooperative and didn't require any compulsion or urging particularly by the Sheriff to have them make the statements. And, for that reason, the Court feels that the only compulsion was their own consciences as far as making the statements. The Court views the Miranda Decision as a situation which applies only to custodial interrogation and under circumstances which are in and of themselves presumed by the Court to be of a compulsive nature. And there is some question in the Court's mind as to the admissibility of any statement they made after they were arrested at a time when they were not advised of their rights. And the Court is going to resolve that in fa-

vor of the defendants and will exclude in the trial any statements made after the arrest during that trip up through the canyon. So the motion of the defendant to exclude the statements will be denied."

At the trial all three defendants took the witness stand on their own behalf and admitted breaking into the Koos cabin and taking the television set. The defendants denied an intent to steal anything when they broke into the cabin. Defense also argued that the value of the TV set was less than $50 thus reducing the offense of grand larceny to the lesser included offense of petit larceny.

The jury returned a verdict of guilty of burglary in the third degree and petit larceny. On the burglary charge the court placed defendants on probation for two years, instructed them to make restitution in money, labor, or both, for damages to the cabins and assessed them $250 costs individually. As to Count 2, the petit larceny charge, the court sentenced the three defendants to (1) thirty days in the Lawrence County Jail, and (2) fined each of them $100.

■ Defendants assign 29 errors as the basis for their appeal. These errors are consolidated into six points in defendants' brief. Point 1 is as follows:

"Did the Sheriff of Lawrence County in obtaining the oral and written confessions, and did the Court in ruling on the admissibility of the confessions transgress the mandate of the Supreme Courts of the United States and the State of South Dakota?"

Point 1 as raised by defendants is crucial to everything that followed—if the admissions were illegal as to any defendant, the conviction must be reversed as to him. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and Harrison v. United States, 1968, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047. On the other hand if the admissions were legally obtained then the reasons that the defendants felt compelled to testify were unimportant as the court committed no error. In the case of Harrison v. United States, supra, the Supreme Court of the United States stated:

"A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him."

At the hearing to suppress held before the trial court prior to arraignment the sheriff and deputy sheriff testified as to the details surrounding the admissions and confessions. The defendants did not take the stand or testify at this hearing which they could have done with immunity. See State v. Thundershield, 83 S.D. 414, 160 N.W.2d 408, wherein this court stated:

"At this hearing the defendant may testify and be cross-examined as to the issue of voluntariness without jeopardy to or waiver of his right to remain silent at the trial."

On the basis of the testimony submitted as to the defendants Tisdale and Hale, the trial court denied the motion to suppress and properly allowed the evidence to be admitted at the trial. Tisdale admitted nothing either at the police station in Spearfish or while his room was being searched by the sheriff. At the conclusion of the search the sheriff went on to Long's room and apparently had no further conversation with Tisdale at that time or until the next day when Tisdale voluntarily appeared at the sheriff's office in Deadwood and made the admissions and wrote out the confession wherein he admitted guilt. The sheriff met defendant Hale for the first time at the sheriff's office in Deadwood when Hale and the other two defendants appeared there with the TV stolen from the Koos cabin and other items removed from this and other cabins. There was no in-custody interrogation of either of these defendants and the voluntary nature of their admissions and confessions was established. See State v. Graves, 83 S.D. 600, 163 N.W.2d 542, and State v. Ferguson, 84 S.D. 605, 175 N.W.2d 57.

In Miranda v. Arizona, supra, the Supreme Court of the United States states:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissable. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibiliy is not affected by our holding today."

After signing the statements the boys returned to their dormitory; the sheriff requested that they come back the next day. They returned as requested on March 15, 1968. On that occasion the defendants waited for some time and then the sheriff told them he was too busy to talk to them and they left. On Monday, March 18, 1968, the sheriff met the boys in the Dean of Men's Office at Black Hills State College and arrested them without a warrant and took them to the county jail in Deadwood, South Dakota. The defendants were first charged with burglary in the fourth degree which was almost immediately dismissed and then were re-arrested on March 26, 1968 and charged with the offenses for which they were tried.

The one common thread running through the entire record, including the testimony given by the defendants themselves, is that all of the circumstances indicate that the defendants were not in custody and were not deprived of their freedom of action in any significant way with respect to the interrogations which occurred prior to the time they were

formally arrested and that defendants knew this. This freedom is illustrated by defendant Tisdale's testimony:

"The next day would have been Friday when we come back and we were supposed to come at 2:00 o'clock and we sat here in the front office, I guess where the secretary is in the sheriff's office, and we sat there for about an hour, I think, and the sheriff, we seen him walking through a few times but he'd say things as he walked through but we really never did get to talk to him, and finally they just told us that we should leave because he was too busy to see us."

During the opening statements the state's attorney informed the jury that the three defendants had brought to the sheriff's office other personal property which was not involved in this case. The jury was also informed that the deputy sheriff had identified such property at the time it was surrendered. At numerous times during direct examination, Sheriff McGrath testified that other cabins had been broken into in the canyon and other items of personal property not involved in the charges for which the defendants were being tried had been delivered to him. The defense objected to this and such objection was sustained by the court and the jury was directed to disregard such statements. Counsel objected to this on the grounds that it implied the defendants were involved in other crimes and such implication prejudiced the defendants to such an extent that they were unable to obtain a fair trial.

The court in sustaining the defendants' objections to the introduction of evidence as to the other crimes was prejudicial to the state and not to the defendants. In the case of State v. Bachelor, 67 S.D. 259, 291 N.W. 738, this court stated as follows:

"The rule, of course, is well established that on the trial of a person charged with crime the evidence must be limited to proof of that particular crime; but there are exceptions to that rule. Where it is necessary to show motive, intent, system or general

> scheme, testimony of other similar offenses claimed to have been committed pursuant to such system or scheme by the person on trial is admissible. \* \* \* State v. Phelps, 5 S.D. 480, 59 N.W. 471; People v. Grutz, 212 N.Y. 72, 105 N.E. 843, L.R.A. 1915D, 229, Ann.Cas. 1915D, 167; State v. Wolfe, 64 S.D. 178, 266 N.W. 116, 104 A.L.R. 464."

Evidence of other break-ins in the canyon and of property removed from these places by defendants was admissible to show the motive for the break-ins, their criminal intent (which they denied) as well as common plan, scheme or system of breaking in unoccupied cabins. State v. Blake, 83 S.D. 359, 159 N.W.2d. 803.

■ During the course of the trial it developed that the television set that had been stolen was a 19-inch television rather than a 17-inch television set as described in the information. The court allowed the state to amend the information so that the same would conform with the evidence. The defendants argue this was error.

■ The amendment here describing the size of the television screen from 17 inches to 19 inches is clearly one of form and not of substance which is authorized by SDCL 23-39-1. The model number and serial number were included and there could be no question as to the identity of the property. An information must apprise a defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to subsequent prosecution for the same offense. See State v. Sinnot, 72 S.D. 100, 30 N.W.2d 455.

■ Defendants complain of that part of the judgment on Count 1 which assessed costs individually against them in the sum of $250. They urge the costs had no supporting evidence and cite SDCL 23-48-31, 23-48-32 and 23-48-33 which permit a court to tax limited costs of prosecution against a convicted person. The assessment of these costs was not made under the cited sections but under SDCL 23-57-4 which provides that upon a verdict or plea of guilty of any person never before convicted of a felony in this state the

court "may suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and conditions as the court may deem best". Founded on SDCL 23-57-4 as a condition of probation it was not limited by SDCL 23-48-31. See People v. Robinson, 253 Mich. 507, 235 N.W. 236, where costs summarily fixed at $200 were approved, and State v. Welkos, 14 Wis.2d 186, 109 N.W.2d 889. Probation is a matter of favor and to accomplish the purpose of the statute an exceptional degree of flexibility is essential. State v. Elder, 77 S.D. 540, 95 N.W.2d 592. Those costs, however, should not be excessive. In People v. Teasdale, 335 Mich. 1, 55 N.W.2d 149, where all defendants pled guilty the court held aggregate costs of $45,500 were excessive. See generally 21 Am.Jur.2d, Criminal Law, §§ 565 and 566; 24 C. J.S. Criminal Law § 1571(8), page 475.

■ The record does not show any objection of the defendants as to the imposition of these costs at the time of sentencing, a motion to modify or reduce the costs or for a hearing thereon. See People v. Teasdale, supra. The amount here does not appear excessive on its face.

Other claims, including an exception to one instruction given by the court, have been reviewed and we are satisfied that if they present any error it was not prejudicial.

Affirmed. .

RENTTO, P. J., dissents.

RENTTO, Presiding Judge (dissenting).

Whether the trial court erred in denying the defendants' motions to suppress must, I think, be decided on the record made at the pretrial hearing on the motions. The defendants, as was their right, did not testify on that occasion. Their subsequent testimony at the trial is irrelevant so far as the determination of their motions is concerned.

The evidence at that hearing was that Hale and Tisdale and a friend were stopped while driving their car in Spearfish Canyon by two deputy sheriffs who ordered them to proceed to the police station in Spearfish to be questioned by the sheriff. This was their direction from the sheriff. Apparent-

ly the deputies drove behind them to Spearfish. When Long appeared on the scene he was taken in tow by a deputy sheriff. They were there interrogated without benefit of the Miranda warning although at that time the sheriff said "they were more than suspects."

If the warning should have been given any confessions or admissions that they made could not be received in evidence at their trial. SDCL 23-44-2. The only exceptions to this are admissions or confessions made "by any person without interrogation or at any time at which the person who made or gave such confession was not under arrest or other detention." SDCL 23-44-3. Their statements do not fall into either of these categories.

The majority hold that this was not an in-custody interrogation. With this conclusion I am unable to agree. In Miranda the United States Supreme Court said that "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody **or otherwise deprived of his freedom of action in any significant way.**" (emphasis added) It seems to me that these defendants in the described circumstances were deprived of their freedom of action in a significant way. See Commonwealth of Pennsylvania v. Sites, 427 Pa. 486, 235 A.2d 387, 31 A.L.R.3d 559 and the lengthy annotation "What Constitutes Custodial Interrogation Within The Rule of Miranda v. Arizona" beginning at page 565.

It is our constitutional duty to give effect to the Miranda rule. The burden is on the state to establish compliance with it. In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, it was extended against the States by the United States Supreme Court, and I have not found any case where that court has eroded the plain import of this portion of its holding. Consequently, I am compelled to dissent.