STATE, Respondent v. KEELING, Appellant

(233 N.W.2d 586)

(File No. 11467. Opinion filed October 3, 1975)

Earl Mettler, Asst. Atty. Gen., Pierre, for plaintiff and respondent; Kermit A. Sande, Atty. Gen., E. Steeves Smith, Deputy State's Atty., Davison County, Mitchell, on the brief.

John S. Theeler of Morgan & Fuller, Mitchell, for defendant and appellant.

DOYLE, Justice.

This is an appeal from a conviction on three counts of violating the confidence game statute, SDCL 22-41-7. We affirm the trial court on all issues.

The facts of this case are relatively simple. In each of the three incidents Keeling entered the establishment, approached a young female clerk and purchased a small item with a large bill. Each clerk gave Keeling change. After receiving the change, Keeling handed it all back to the clerk and asked for another bill in exchange, but the amount he requested was substantially *less* than that to which he was entitled. The clerk invariably pointed out his "error" and attempted to give him the correct change. Keeling then repeatedly asked for and received change, always moving the bills with great speed. In all three instances he ended up his scheme by asking for and receiving eight $5 bills, leaving the clerk approximately $30 short.

*I. The Element of Confidence.*

The defendant's principal contention is that the state failed to prove the element of confidence at trial. It is true that the " 'gist of the crime of confidence game is the obtaining of the confidence of the victim by some false representation or device.' " *State v. Cole*, 1969, 84 S.D. 111, 113, 168 N.W.2d 507, 508. We find, however, that there was sufficient evidence of the "obtaining of confidence." The defendant had been engaged in a "quick change" or "short change" scheme. In each instance he commenced his operation by offering a clerk or cashier more money than the clerk or cashier was entitled to have. Through this simple method he gained the requisite confidence of the clerk.

The defendant, through citation of *State v. Cole*,

*supra,* a case involving an elaborate scheme, implies that each confidence game must be of such a quality. This is not the case. For example, the simple passing of a bad check by a regular customer has been held to violate a confidence game statute. *McBride v. People,* 1952, 126 Colo. 277, 248 P.2d 725. Thus it is not the duration of the scheme which is important. It is sufficient if the scheme results in the gaining of confidence by the confidence man. Nor must the confidence be of an extremely high quality. "[T]he law does not require that the victim's confidence be absolute, unlimited, and without qualification." *Marshall v People,* 1966, 160 Colo. 323, 417 P.2d 491. Here each cashier reacted predictably, extending her trust to the confidence man because he had made the offer of too much money. This degree of confidence was sufficient under our statute.

█ We therefore conclude that the elements of the crime of "confidence game" were proven at trial. Furthermore, we note that the defendant's contention that he was not afforded a preliminary examination because the "confidence" element was not proven at the hearing must fail because the same evidence as to each of the elements of a crime was produced at the hearing as was produced at trial.

## II. Evidence of Similar Offenses.

The defendant's next major contention is that the trial court erred in allowing production of evidence of similar offenses of the defendant committed at approximately the same time.

█ The cases of this court, however, definitively establish that such evidence of similar offenses is admissible to show motive, a common plan or scheme, or modus operandi. In *State v. Long,* 1971, 85 S.D. 431, 185 N.W.2d 472, this court said:

> "Evidence of other break-ins in the canyon and of property removed from these places by defendants was admissible to show the motive for the break-ins, their criminal intent (which they denied) as well as common plan, scheme or system of breaking in unoccupied cabins."

*State v. Blake,* 1968, 83 S.D. 359, 159 N.W.2d 803, is to the same effect. The defendant cites *State v. McCreary,* 1966, 82

S.D. 111, 142 N.W.2d 240, as authority that such evidence is not admissible. However, this case merely stands for the proposition that when evidence of another crime tends only to show bad character and has no connection with the crime charged, it may not be introduced. The court in the same case cites which approval language from 22A C.J.S. Criminal Law § 691(7) which states that evidence as to other crimes is admissible to show "motive, guilty knowledge, a regular or similar system, or a common scheme or plan, or modus operandi * * *." 142 N.W.2d at 244-245.

■ It appears to this court that the evidence of other break-ins was properly admitted under the "common plan or scheme" and "modus operandi" and the defendant's objection thereto fails.

### III. Expert Testimony.

■ The defendant next urges that the state's expert witness, an experienced "confidence man," should not have been allowed to testify. The defendant, however, was not harmed by the testimony of the "confidence man;" indeed, the testimony was favorable to his position that there need be no confidence extended to a quick-change artist for the scheme to succeed. Therefore, the defendant was not prejudiced and the ruling of the court was at most "harmless error."

### IV. Witnesses Added to Information.

A further contention of the defendant is that the court erred in allowing additional witnesses to be added to the information at the time of trial. The witnesses in this case were not known by name at the time the information was filed, but the state did know where they worked and it revealed this information. Thereafter, on the first day of the trial, the names were added. The defense did not contend that it was surprised or prejudiced by the additions nor did it seek a continuance for further preparation.

■ This court has held that a trial court can, in the exercise of sound judicial discretion, allow the addition of names to an information at the time of trial even when the names are known

at the filing of the information but through inadvertence omitted, unless there is a "showing of abuse or some bad faith * * * in purposely withholding the name * * * resulting in substantial prejudice to the accused * *." *State v. Rober*, 1972, 86 S.D. 442, 197 N.W.2d 707. Here the names were not known and there was no abuse, bad faith, or substantial prejudice to the accused.

*State v. Frazer*, 1909, 23 S.D. 304, 121 N.W. 790, cited by defendant, is not helpful to him. That case makes it clear that the defendant must demonstrate that the state actually knew the names of the witnesses before he can take advantage of the statute. Here there was no such demonstration. Furthermore, we might add that whatever force this case might have had previously is certainly seriously undermined by the holding of *State v. Rober, supra,* i. e., even if the demonstration of knowledge by the state called for in *Frazer* were made, the court would still demand a showing of the factors mentioned in *Rober* before it would disallow the addition of names to, an information.

## V. The Due Process Issue.

The defendant's final contention is that he was deprived of due process because the trial court denied his motion to suppress testimony from all witnesses who had viewed an illegal lineup.

The defendant, however, is in error. It is true that his lineup was unfair; in fact, it was but a showup in which only the defendant was exhibited to the witnesses. Furthermore, the defendant was not told of his right to counsel at the lineup.[1] We

---

1. In holding that the defendant was deprived of his right to counsel, we note our agreement with *United States ex rel. Robinson v. Zelker*, 1972, 2 Cir., 468 F.2d 159, that the "adversary judicial (criminal) proceedings" spoken of in *Kirby v. Illinois*, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, can be said to commence when a judge issues a warrant on information under oath. Thus the right to counsel under *United States v. Wade,* 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, as interpreted in *Kirby v. Illinois,* supra, had arisen at the time of the lineup in this case as such a warrant had apparently been issued. See also *Commonwealth v. Richman,* 1974, 458 Pa. 167, 320 A.2d 351. (We recognize there is some confusion as to whether the warrant had, in fact, been issued, but for the purpose of this opinion we assume that it had been. Contrast SR 195 and 197 with testimony that the identification took place on March 5 (SR 193) and the fact that the warrant is dated March 7.)

condemn these practices as inconsistent with the requirements of constitutional law and with good police procedure. See *United States v. Wade,* 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California,* 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; *Stovall v. Denno,* 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *Neil v. Biggers,* 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

■ We find, however, from our examination of the record,[2] that the in-court identifications of the defendant by the witnesses were not tainted by the out-of-court identifications. In so doing, we follow the United States Supreme Court's analysis of this precise problem. In *United States v. Wade, supra,* the court found that the question of whether the in-court identification was "purged" of the taint required

> "consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165.

■ When we apply these criteria to this case we find that the state has produced the required "clear and convincing" evidence that the pretrial identification was not unnecessarily suggestive. *United States v. Wade, supra.* The witnesses had an excellent opportunity to observe the defendant as he was standing before them for a period of at least five minutes, talking with them and dealing with them. He intentionally sought to bring

2. We are not confined to a reading of the suppression hearing to determine whether the evidence was properly allowed but rather we may examine, at a minimum, the evidence adduced both at that hearing and the preliminary hearing. We need not decide if we may look to the record of the trial itself. Cf., *Davis v. North Carolina,* 1966, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895. See SDCL 23-51-19.

their attention to him personally and not to the money being passed. Furthermore, there was no doubt expressed that the man identified was in fact the person who committed the act. The identification itself took place not more than three days after the alleged acts. In this light, then, we find that the pretrial identification did not taint the witnesses' testimony so that their in-court identifications must be suppressed. See *State v. Johnson,* 1972, 87 S.D. 43, 202 N.W.2d 132. We stress, however, that this would probably not be the result when the contact between the defendant and the witness is not of the high quality as it was here.

The defendant has raised several other issues which this court has considered and which are without merit.

Affirmed.

All the Justices concur.