STATE, Respondent, v. NESBETH, Appellant.

(277 N. W. 36)

(File No. 8125. Opinion filed December 30, 1937)

*Tom Kirby,* of Sioux Falls, for Appellant.

*Clair Roddewig,* Atty. Gen., and *Ellsworth E. Evans,* Asst. Atty. Gen., for the State.

POLLEY, J. The information in this case charges that the defendants, Lee Bradley, William R. Nesbeth, and Harry Reeves, murdered one Floyd Parker, who went by the name of Harold Baker, some five or six miles southeast of Sioux Falls on the evening of the 31st day of December, 1936. Bradley fled the State immediately after the murder and has not been apprehended. Reeves was arrested in Sioux City three or four days after the

murder, charged with the robbery of a jewelry store in Sioux City on the 22d day of December, 1936. He pleaded guiltv to that charge and was sentenced to a long term in the penitentiary at Fort Madison, Iowa. Nesbeth was arrested in the State of Oklahoma about the last day of February, 1937, and was tried alone for the murder of Baker. Reeves was brought back from Fort Madison and testified on behalf of the State at the trial of Nesbeth, while Nesbeth testified in his own behalf.

During the afternoon of December 30, 1936, the three defendants, Bradley, Nesbeth, and Reeves, left Sioux City, Iowa, in an automobile and drove to Omaha, Neb. They went to No. 522 North Nineteenth street in that city where they picked up Baker, the decedent, and Helen Seiler. Baker and Mrs. Seiler were not expecting the defendants and, upon some questions being raised as to where they were going, Bradley replied that they were going to Sioux Falls to get some dynamite. From Omaha they drove by way of Norfolk, Neb., to Yankton, where they crossed the Missouri river, and from there to Sioux Falls, where they arrived about 5 o'clock on the morning of December 31st. On their arrival in Sioux Falls, Baker and Mrs. Seiler went to the A Y P Hotel, where they remained until the following evening. Reeves went to another hotel, where he stayed all day, while Bradley took Nesbeth with him to the home of his mother who lived in Sioux Falls, where they stayed at least part of the day. They had an understanding when they separated that morning that they would all get together that evening. Reeves and Nesbeth do not agree on just what happened in the evening. Reeves testified that when Bradley and Nesbeth came around with the car in the evening that Reeves got into the car and Bradley drove out about six miles southeast of Sioux Falls to what was known as the Larson Company's powder house, or "dynamite shack," as some of the witnesses called it, which stood out in a field about 125 yards from the road. At that time the powder house contained 310 25-pound kegs of powder and approximately three tons of dynamite. Bradley and Nesbeth pryed the lock off the door. Bradley went inside and pryed the lid off a box of dynamite and put some of the dynamite in his pocket. All three of them then got into the car again and went back to Sioux Falls. They picked up Baker and Mrs. Seiler.

Reeves, Baker, and Mrs. Seiler getting into the rear seat of the car while Bradley and Nesbeth rode in the front seat, with Bradley driving. They then drove back to the dynamite shack; they parked the car in the road, and Bradley told Nesbeth and Baker to come over to the shack with him while he got some dynamite, and told Reeves to stay in the car with Mrs. Seiler. After an interval of five to ten minutes, Nesbeth came back to the car and told Mrs. Seiler and Reeves that Bradley and Baker were fighting and asked Mrs. Seiler to come over and see if she could get them to stop. All three, Nesbeth, Reeves, and Seiler, then went over to the powder shack. When they arrived there, Baker was lying on the ground apparently dead. Mrs. Seiler ran over and, as she bent over him, Reeves or Nesbeth knocked her down and Reeves or Bradley or both of them shot her; together they shot eight bullets into her body and Bradley kicked her. Then, apparently believing both Baker and Mrs. Seiler to be dead, all three of them picked her up and threw her into the shack, and then picked up Baker, and threw him in on top of her. Bradley then lighted a fuse he had in his pocket, and which was attached to a stick of dynamite. He threw the stick of dynamite with the burning fuse attached into the powder house, then all three of them ran for the car and made their getaway as fast as possible. The fuse burned until it ignited the dynamite and the entire contents of the powder house exploded. The powder house itself was completely obliterated, and only a few small fragments of Baker's body were ever found; but Mrs. Seiler was not injured in any manner by the explosion. In spite of the fact that she had been kicked and beaten and shot until she was supposed to be dead, one bullet lodged in her head back of her right eye, and permanently blinded her eye, and another bullet lodged in her spine, neither of which had been removed at the time of the trial, she did not at any time lose consciousness until the explosion occurred. She testified that she felt each bullet as it was shot into her body; that she knew when she was thrown into the powder house; that she saw Nesbeth give Bradley a match with which he lighted the fuse, and saw him and Reeves and Nesbeth when they ran for the car. The instant they left she started to crawl out of the powder house. She tried to drag Baker out. She took hold of his coat collar and tried to pull him out, but her

hands were so bloody they slipped off and she was unable to move him. She was not able to get up on her feet and run, but she continued to walk and crawl as best she could, and by the time the explosion took place she was far enough away to escape further injury. Some little time after the explosion she was found lying in the snow by the side of the road by some boys who put her into their car and took her to a hospital in Sioux Falls.

So far as is shown by the evidence in the record there had been no idea in the mind of either of the defendants prior to their leaving Sioux City of murdering or disposing of the bodies of Seiler and Baker. The matter does not appear to have been mentioned by either of the defendants, nor does any motive for the commission of the crime appear to have existed. Yet the whole enterprise appears to have been carefully planned, by Bradley at least, and this assumption is strengthened by the remark: "We are going to Sioux Falls to get some dynamite," made by Bradley when they started from Omaha.

In order to show the motive of the defendants in disposing of Baker and Seiler, the court admitted evidence of the commission of a robbery in Sioux City, Iowa, on the evening of the 22d day of December, 1936, ten days prior to the murder. This was known as the Ehlerman robbery. Ehlerman had a jewelry store in Sioux City. He appears to have been very hard up and conceived the idea of realizing on his burglary insurance. He made arrangements with Nesbeth to rob his store. Nesbeth took Bradley, Baker, and Reeves in on the venture. Bradley and Baker committed the actual robbery. Reeves acted as lookout, but Nesbeth stayed away and took no part in the actual robbery. Ehlerman had agreed to give Nesbeth $1,000 for "pulling the job," to be paid as soon as he (Ehlerman) got his money, and Reeves said he was to have $1,000. What the others were to have does not appear in the record, other than that Baker claimed he was to have $250 for his "share."

Mrs. Seiler knew of the plan to rob the Ehlerman store before the robbery took place, and knew the particulars of the robbery when it was committed. Whether Ehlerman. paid Nesbeth the $1,000 he was to have does not appear from the record, but Baker did not receive what he was expecting. The commission of the

robbery caused something of a sensation in Sioux City as well as great activity on the part of the police force in an effort to apprehend the perpetrators of the crime. Baker and Mrs. Seiler were occupying a room in the Burlington Hotel at the time of the robbery. This hotel was owned and operated by Nesbeth. In their own language things became "pretty hot and dizzy" around Sioux City, and Nesbeth thought it would be better to get Baker and Mrs. Seiler out of Sioux City until things cooled down a little. To carry out this idea Nesbeth himself took Baker and Mrs. Seiler over to LeMars and put them on a train for Omaha. This was on the 23d day of December, the next day after the robbery. On the way from Sioux City to LeMars, Nesbeth gave Baker $25. As he gave this money to Baker, Nesbeth said that was all the money he could get out of Ehlerman, but that he would write and connect up later. Before they parted, they had an understanding that Baker and Mrs. Seiler should go by the name of Mr. and Mrs. Roy Johnson, and that Nesbeth should be George Allen, Rutland Hotel, Sioux City, Iowa. Mrs. Seiler testified that Baker wrote a letter to Nesbeth during the week Baker and Mrs. Seiler were in Omaha. Nesbeth claims he never received this letter and what became of it is not shown by the record; neither is it shown how he learned the street and street number of the room in which Baker and Seiler were staying if he did not receive the letter. On the 29th day of December Baker sent a telegram to Nesbeth which reads as follows:

"Omaha, Nebr. December 29, 1936. George Allen, Rutland Hotel, Sioux City, Iowa. No reply to letter. Must hear now. Need money today. Do not fail sending expense money at least. Advise sending $125 balance my share as I wish to go California at once. Deal closed if you agree. Must have expense money today. Broke. Wire Western Union.

"Roy Johnson."

This telegram was received by Nesbeth. It could easily be regarded as a veiled threat that, if the balance of what he considered he had coming from the Ehlerman loot was not forthcoming he might give out information that would prove damaging to the perpetrators of the Ehlerman robbery; and it may be that it was the receipt of that telegram that decided Nesbeth, Bradley, and

Reeves to dispose of Baker and Mrs. Seiler. Reeves testified that Nesbeth showed the telegram to him and Bradley the next day and that Bradley was very angry. Baker and Seiler knew so much about the criminal activities of Bradley, Reeves, and Nesbeth that for their own safety they felt it would be necessary to render it impossible for Baker and Mrs. Seiler to give damaging information. At any rate, they lost no time after receiving the telegram until they were on their way to Omaha to get Baker and Mrs. Seiler and take them to Sioux Falls.

The Ehlerman robbery was a wholly different crime from the Baker murder. The two crimes were in no manner connected, nor was the proof of one in anywise dependent upon evidence of the other, and it is the contention of the appellant that the court erred to his prejudice in receiving evidence of the Ehlerman robbery. The rule that, upon the trial for one crime, evidence of another wholly unconnected crime is not competent, is so thoroughly established that the citation of authorities would be a work of supererogation, but the exceptions to this rule are as well established as the rule itself; and where it becomes necessary to show a motive for the commission of the crime for which a party is on trial, to show the commission of another, though unconnected crime, the evidence of such crime is competent. This question is discussed at some length, and authorities collected in 8 R. C. L. on page 199 at paragraph 195. This matter was also discussed at great length in People of State of New York v. Molineux, 168 N. Y. 264, 61 N. E. 286, and note to the same case in 62 L. R. A. 199.

Upon this question the court instructed the jury as follows: "Some evidence has been received in this case in regard to a jewelry robbery known as the Ehlerman robbery at Sioux City, Iowa. You are instructed that the defendant, William R. Nesbeth, is not on trial for the jewelry robbery, or any other acts of the defendant except the crime charged in the information, and the testimony in regard to the Ehlerman jewelry robbery was only admitted for the purpose of showing relations existing between the parties, if any, and the motive, if any, for killing Harold Baker, and must not be considered by you for any other purpose." This instruction fully protected the rights of appellant, and we are

satisfied that appellant was not prejudiced by the admission of the evidence relating to the Ehlerman robbery.

Nesbeth's testimony differs from that of Reeves in many details. He denied all connection with, or knowledge of, the Ehlerman robbery except what he read in the newspapers. He denied giving Baker $25 when he went to Omaha, but said that he loaned Baker $25 the day before. He denied having the understanding with Baker that he (Nesbeth) was to be known as George Allen, Rutland Hotel, Sioux City, Iowa, yet the night letter above set out was addressed to George Allen, Rutland Hotel, Sioux City, Iowa, and was delivered at that address at 11:14 p. m. December 29th, and the contents of the night letter were of such a character that no one but Nesbeth, Bradley, or Reeves would have known what it meant. He claimed that he had no personal interest whatever in the trip from Sioux City to Sioux Falls; that Reeves hired him and paid him $25 for making the drive from Sioux City to Omaha and from there to Sioux Falls by way of Yankton; that Bradley, Seiler, and Baker were going west from Sioux Falls; and that only himself and Reeves were to come back to Sioux City. He denied that Bradley, Reeves, and Nesbeth went from Sioux Falls out to the powder house and broke open the door and the box of dynamite and got a stick of dynamite before they took Baker and Seiler out, but testified that they made only the one trip from Sioux Falls to the powder house; that they took Baker and Seiler with them and that Baker helped to break the lock off the door. He said that, while he was with Bradley and Reeves all the time, he had no idea that Bradley or Reeves intended to kill Baker or Seiler; that he took no part in breaking the lock or assaulting Baker or Seiler; that he did not help to put either Baker or Seiler in the powder house; and that he did not furnish the match to Bradley with which to light the fuse.

While he admitted he was with Bradley and Reeves throughout the entire trip, he claimed that he was under coercion by Bradley; that he was afraid of Bradley and did what Bradley told him to do because he was afraid Bradley would kill him if he did not; and that he jumped out of the car and left Bradley and Reeves at the very first opportunity that presented itself. It is probably true that he left them at LeMars almost immediately

after the murder, but on the whole his story does not sound probable to us, and anyway, his testimony presented only a question of veracity for the jury. We agree with counsel for appellant when he says: "The case really resolves itself upon the credibility of Helen Seiler and Reeves on one side, and the defendant on the other." And again we agree with counsel when he says: "That there was evidence sufficient to justify the verdict of the jury, if believed, defendant concedes, but the evidence and the only evidence as to defendant's guilt was that of Helen Seiler and Harry Reeves. Both of them possessed reputations and characters that were away on the shady side."

There certainly isn't very much that can be said for the reputation or the character of any of them, but again this presents only a question for the jury and the finding of the jury is final. An examination of the instructions given the jury by the trial court fails to disclose any prejudice to the appellant.

The judgment and order appealed from are affirmed.

RUDOLPH, P. J., and ROBERTS, WARREN, and SMITH, JJ., concur.