**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Reginald FURLOW, Defendant and Appellant.**

**No. 11965.**

Supreme Court of South Dakota.

Argued March 22, 1977.

Decided Dec. 30, 1977.

---

Gene Paul Kean, State's Atty., Bonnie P. Ulrich, Deputy State's Atty., Minnehaha County, Sioux Falls, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Timothy J. McGreevy, of Dana, Golden, Moore & Rasmussen, Sioux Falls, for defendant and appellant.

PORTER, Justice (on reassignment).

Defendant appeals from his conviction on a charge of possession of a controlled substance. SDCL 39–17–95 (now SDCL 22–42–5 and SDCL 22–42–6). He contends that prejudicial error occurred when the trial court permitted the State to cross-examine him concerning the details of a former conviction. We sustain his contention and therefore reverse.

## FACTS

On November 13, 1975, about 1:30 p. m., four officers entered Apartment 4, 109 North Duluth Avenue, Sioux Falls, South Dakota, to search the premises. They were acting under a search warrant issued in the case of *State v. Darrell Crites,* and were looking for marijuana. After knocking and receiving no response, they entered with a key earlier obtained from Crites, who had been taken into police custody on a street in Sioux Falls about 11:00 a. m. that day. The apartment telephone was listed in Crites' name and the officers had reason to believe it was his apartment.

The apartment consisted of a room about twenty feet square, and an adjoining kitchenette about six by eight feet in size. There was a small bed or couch near the only door into the apartment, and a bed in another part of the room. The clothes closet was five or six feet long and full of male and female clothing, on hangers. Various jackets, underwear, shirts and socks were strewn about, and there were combat boots and other footwear on the floor.

When the officers entered, they found defendant lying on his stomach on the small bed or couch near the door. They tried but were unable to rouse him. They immediately handcuffed him because in their past experience, "He [had] always had dangerous weapons at hand." Defendant was wearing blue jeans and a denim shirt, but no footgear. There was no one else in the apartment.

The officers searched the apartment. They found a 15.1 ounce bag of marijuana in the freezer compartment of the refrigerator in the kitchenette, two bags totaling 1.2 ounces in the refrigerator, and two bags totaling 1.2 ounces in a cake pan in a furniture cabinet in the main room. A car coat, which one of the officers had seen defendant wear on prior occasions, was found in the closet.

Forty minutes after entry the officers were ready to leave. They roused defendant by physically pulling him up from the bed and standing him on his feet. In doing this they discovered two knives on the bed. Defendant was placed under arrest for possession of a controlled substance.

Once awakened and brought to his feet, defendant was belligerent, attempted to kick one of the officers in the groin, called them names, and told them they had no business there. When asked if he wanted to get his boots on he refused, and thereafter went without footgear. At defendant's request an officer took him to the bathroom, which is apparently located down the hall from the apartment. While waiting outside the building for a police car defendant again called the officers names, told them they were not going to pin anything on him, and that they were not going to take him in. He then started walking down the sidewalk, at which time the officers physically restrained him until the police car arrived. He resisted being put into the patrol car, kicking one officer in the shins several times during the process; and on the way to the police station he spit at and bit one of the officers.

The State's evidence established that defendant had opened an account in a Sioux Falls bank on November 6, 1975, giving an address on South Spring Street, in Sioux Falls, together with a local telephone number, and requesting that his check blanks be sent to him in care of Darrell Crites at the North Duluth Street address. The thank-you note sent by the bank to the defendant at the South Spring Street address was returned with the notation that no one by defendant's name lived there, whereupon a bank employee called for defendant at the telephone number he had given at the time he opened the account. The person answering in response to the call stated that his address had been changed to 109 North Duluth. A new thank-you note and a bank statement sent to defendant in his individual name at that address were never returned to the bank. The telephone number given by defendant at the time he opened the account was that listed under the name of Darrell Crites at 109 North Duluth. Approximately a week after defendant's arrest, one of the officers who had participated in the search returned to the apartment building to look for another person. He saw a small check blank box addressed to defendant at Apartment 4, 109 North Duluth, lying on a board covering a heating radiator in the hallway of the building. The box bore postage and a bank name.

Defendant testified that although he was a friend of Darrell Crites, he was not living at Crites' apartment on November 13, 1975. He testified that he had been drinking throughout the night of November 12 and knew that he could not make it home, and had gone to Crites' nearby apartment to sleep. He denied having had any knowledge that marijuana was present in the apartment, and denied telling anyone at the bank that he lived at the North Duluth address.

## ISSUE

Were the details of defendant's 1968 conviction admissible either to impeach defendant, or as substantive proof of any element of the crime charged?

## I

At trial the State contended it could cross-examine the defendant on the details of his 1968 conviction in order to impeach his previous testimony. On that basis the trial court allowed, over proper objection, the cross-examination questions and answers challenged on appeal.

The marijuana in the Crites apartment was not in defendant's actual possession nor in the plain view of anyone coming into the apartment.[1] Defendant did not claim that although he saw the marijuana he did not

---

1. The officers found marijuana in the refrigerator and in a cake pan in a partially opened cabinet. The officers did not see the marijuana in the cabinet until one of them stood "right in front of [it]," at which time he looked down and "saw inside the door of the cabinet what was inside this cake pan."

recognize it as such. His defense, as given on his direct examination, was that he had been drinking all night and went to the nearby Crites apartment to sleep it off; that he knew Crites and had visited there before; that on entering the room he immediately lay down and went to sleep on the small bed or couch near the apartment door where the arresting officers found him asleep in the early afternoon of November 13; that at the time of his arrest he did not know of the marijuana in the apartment; and that the marijuana the officers found was not his.

■ On cross-examination the prosecutor did not inquire whether defendant had ever looked inside the freezer compartment, the refrigerator, or the cabinet where the officers found marijuana. Instead, after objection was sustained to a question asking defendant if he knew the name of the plant contained in the bagged marijuana exhibits, the prosecutor asked, "Mr. Furlow, you know what marihuana looks like, don't you?" This question, under the circumstances, can only be viewed as asked in order to create an issue, after which the 1968 conviction details would be elicited.[2] "The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue. Both the statement and the veracity of the witness are then collateral matters and the cross-examiner is bound by the response." *People v. Bennett*, 393 Mich. 445, 449, 224 N.W.2d 840, 842 (1975).

■ After denial of defendant's objection to the prosecutor's question, defendant answered the question, "No, not really."[3] Apparently on the basis of this answer, the prosecutor, after several questions about defendant's name, was then permitted, over objection, to proceed as follows:

Q Mr. Furlow, have you ever been convicted of a felony before?

A Yes, I have.

2. *See* text accompanying note 4, infra.

3. "Marijuana is an item which is not readily identifiable . . . ." *State v. Herman*, S.D., 253 N.W.2d 454, 457 (1977).

Q When?

A Sixty-eight, and, I think, seventy-two.

Q And what was the conviction in 1968 for?

. . . . .

[DEFENDANT'S COUNSEL]: [after requesting and obtaining leave of court to ask questions for purposes of an objection] Mr. Furlow, [the prosecutor] asked you as best you can recall ___

[PROSECUTOR]: I'm going to object.

. . .

THE COURT: Sustained.

[DEFENDANT'S COUNSEL]: When you testified that you really didn't know what marihuana looked like what did you mean by that answer?

[PROSECUTOR]: Objection. I think the answer should stand as it was.[4]

THE COURT: Sustained. . . .

. . . . .

[PROSECUTOR]: And what was the conviction in 1968 for?

A My conviction in 1968 was for possession of a controlled drug.

Q And what controlled drug is that?

A Amphetamines and supposed to be two joints of marihuana.

Q Amphetamines and marihuana, you said?

A That's right.

We conclude that this cross-examination was error for two reasons:

1. It was error to allow the prosecutor to inject a collateral issue on cross-examination and thereafter to impeach defendant on the collateral issue. *State v. Davidson*, 9 S.D. 564, 70 N.W. 879 (1897).

2. Even if it be assumed the issue injected was not collateral, use of the details of the 1968 conviction to impeach defendant on the issue of whether he knew what marijuana looked like was error, since the 1968 crime details are probative of nothing in this 1976 trial.

4. *See* text accompanying note 2, supra.

When the prior conviction is used to impeach a defendant who elects to take the stand to testify in his own behalf, two inferences, one permissible and the other impermissible, inevitably arise. The fact that the defendant has sinned in the past implies that he is more likely to give false testimony than other witnesses; it also implies that he is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life. The law approves of the former inference but not the latter. *United States v. Harding*, 525 F.2d 84, 89 (7th Cir. 1975).

Wigmore explains the disapproval of the latter inference in this manner:

> The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of Court. 1 Wigmore, Evidence § 57 (3d ed. 1940).

■ A prior felony conviction, under the circumstances of this case, can be used against a defendant on cross-examination only to impeach his general, overall credibility. On cross-examination, details of the prior felony have no intrinsic probative value, and thus may not be used to rebut or impeach some particular statement of the defendant made on his direct or cross-examination relative to the crime for which he is on trial. Cross-examination of defendant concerning the details of a prior felony was incompetent for any purpose in this case. *See* McCormick, Evidence § 43 (2d ed. 1972); Weinstein, Evidence § 609–79 (1976).

## II

■ On appeal the State's claim of a right to elicit the details (without which the jury would not have known the 1968 conviction was for marijuana possession) reasons that (1) knowledge that the substance was in fact marijuana is a necessary element of the crime charged; (2) defendant's 1968 conviction was proof that he, in fact, was familiar with the substance and knew what it looked like; (3) this made it more probable than not that defendant was in knowing possession of the marijuana; and (4) thus the 1968 conviction tended to prove an element of the crime here charged. The correctness of assumptions (2) and (3) aside, to accept the State's claim is to permit the 1968 conviction to serve as *substantive* evidence of the crime charged. "The conviction is not evidence of defendant's guilt of the offense for which he is on trial, . . ." *State v. Van Beek*, 87 S.D. 517, 520, 211 N.W.2d 355, 356–57 (1973), and thus may not be received here as *substantive* evidence against defendant. Evidence offered and received for impeachment, as here, cannot serve as *substantive* evidence of the crime charged. The details of the 1968 conviction, elicited by the State on cross-examination of defendant, were not admissible on the theory that they were proof of an element of the crime for which defendant was on trial.

■ It is one of the fundamental concepts in our criminal justice system that evidence of past crimes is not admissible to prove a defendant's disposition to commit the crime charged. *See State v. Johnson*, S.D., 254 N.W.2d 114 (1977); *People v. Wright*, 51 Ill.App.3d 461, 9 Ill.Dec. 547, 366 N.E.2d 1058 (1977); McCormick, Evidence § 190 (2d ed. 1972). The rationale for the rule is the recognition that the jury may convict a defendant based on his prior acts and not solely on the basis of the proof in the case at hand. *State v. Hanks*, 55 S.D. 63, 224 N.W. 946 (1929). The rule has many well-recognized exceptions, *see* McCormick, Evidence § 190 (2d ed. 1972), but the only one invoked here relates to use of the former conviction to *impeach* defendant on the witness stand. This exception does not allow the prosecutor to elicit the details of the former conviction, *State v. Van Beek*, 87 S.D. 517, 211 N.W.2d 355 (1973). Over proper defense objection the State was nevertheless permitted to do so here, and thereby communicated to the jury that defendant had been convicted eight years earlier of marijuana possession, the identical offense for which he was on trial. In *State*

*v. Johnson*, S.D., 254 N.W.2d 114, 119 (1977), we held that even if such cross-examination "is somehow related to defendant's veracity, the relationship is so tenuous that the prejudicial effect . . . undoubtedly outweighs its probative value" as impeachment.

## CONCLUSION

The evidence adduced relating to constructive possession was entirely circumstantial. The trial court in essence called it a close case and gave that as one of the reasons for the decision made at the close of the State's case to restrict cross-examination concerning the prior convictions. See Appendix. At the conference in chambers following the State's rest, see Appendix, the trial court correctly and adequately warned the State of the prejudice which could arise from allowance of the cross-examination the State requested. We agree with what the trial court told the prosecutor in explaining the ruling made after the State rested. When the State persisted and was later allowed to make the cross-examination challenged here we must conclude it was done by the State with full realization of the prejudice involved. Defendant was not entitled to a perfect trial, but he was entitled to a fair trial, which we conclude he did not receive. The judgment must therefore be reversed.

Because of our holding we do not reach other issues raised by defendant on this appeal.

Reversed.

ZASTROW and MORGAN, JJ., concur.

DUNN, C. J. and WOLLMAN, J., dissent.

## APPENDIX

The following are portions of the dialogue in chambers after the State rested its case:

THE COURT: Before we go back in I'd indicated to counsel at the pre-trial this morning before we started, in response to a motion in limiting [sic] by the defendant concerning prior convictions, that I would deny the motion. Now, having heard the State's case I'm going to reverse myself and I'm going to re-instruct the State from showing what the convictions were for. In view of the evidence that I've heard so far I think the dangers of allowing the jury to know what those prior convictions were for outweigh the reasons for admission of them and I would restrict the State, in the event the defendant takes the stand and the State seeks to impeach him by prior convictions, the State is restricted to showing when the conviction was and that it was for a felony, but not what the specific felony was or the nature of it.

. . . . .

[PROSECUTOR]: I would . . . refer the Court to . . . State versus Van Beek . . . 211 N.W.2d 355 . . . Certainly in this case if the defendant is going to take the stand he is going to deny that he was in possession of these particular drugs and I can't think of any more accurate and reasonable method of impeaching him when he makes that statement than to bring out what his two prior convictions were for. If it were for anything else, perhaps, but in this case if he takes the stand and denies knowledge of possession of those drugs I think that the nature of the crime for which he was convicted very definitely goes to impeachment of his statement as to that fact.

THE COURT: . . . I'm familiar with the *Van Beek* case and the *Olson* case . . .. I'm also familiar with South Dakota cases which say that a Judge may keep from the jury relevant, material evidence if it is his feeling that it's [sic] probative value is outweighed by the possible prejudice and prior to trial this morning I felt one way. Now, after hearing the evidence I feel the other way and . . . in view of the status of the evidence now I feel the prejudice outweighs the probative value and I'll prohibit the State from going into what the convictions were for.

[PROSECUTOR]: May I ask for the reason for the Court's change of ruling?

THE COURT: . . . [Y]es. I can tell you. On the present status of the evidence I think that a jury might well place probative evidentiary value upon what those convictions were for, that if the defendant takes the stand and that's all we're talking about here because that's the only time it could be used _ _ _ enter a plea of not guilty. If he takes the stand I assume he's going to say that he wasn't in possession of the marihuana or something from which a jury can infer this. Evidence of the convictions is introduced for impeachment and may not be used as any [sic]. In view of the evidence we have so far, which isn't ironclad, it isn't like it's found in the defendant's pocket, with the evidence concerning the apartment and the ownership of it and the occupancy of it I am concerned about the jurors _ _ _ the danger of the jury considering the convictions as substantive evidence in determining whether he possessed this marihuana, that's why. I would feel less danger _ _ _ let me put it this way. My ruling would be the contrary if these were grand larceny charges rather than drug charges.

. . . . .

[PROSECUTOR]: . . . Let's assume the defendant is on the stand and he is asked, assuming his defense counsel: Did you know those drugs were there; did they belong to you? At the point he says, no, don't you feel at that particular point it becomes very relevant as to impeachment and impeachment only?

THE COURT: To show that at some prior time he had drugs?

[PROSECUTOR]: To show that at a prior time he was convicted. It impeaches his statement that he's saying, no, at that time.

. . .

THE COURT: This is the very thing I'm afraid the jury would do, .· . . and under the law they're not permitted to do. The fact that he had drugs in his possession in 1972 or '68 or whenever the dates were has no relevancy whatsoever as to whether he had drugs in his possession on November 13th or whatever it was of 1975.

. . . . .

[PROSECUTOR]: If the defendant takes the stand would I be permitted to question him as to whether he has ever had possession of controlled drugs?

THE COURT: No. Just based merely upon that, he takes the stand, and you ask him the question, no. Now, I don't know in what context it will come up. I don't know what he'll have said on direct, but, no, you can't furnish the basis for getting in what you want to get in by asking the question yourself. It will depend on what comes out in direct. . . .

WOLLMAN, Justice (dissenting).

I would affirm the conviction.

The burden was upon the state to establish by all of the facts and circumstances that defendant was in actual or constructive possession of the marijuana. Knowledge that the substance was in fact marijuana is an element of the offense of unlawful possession of a controlled substance. SDCL 39–17–95. Cf. *State v. Barr*, S.D., 237 N.W.2d 888. Once defendant testified on direct examination that he had no knowledge that there was marijuana in the apartment on the day in question and that it was not his marijuana, it was proper for the state to probe his familiarity with the nature of the substance that he was alleged to have possessed and then to establish by the fact of his prior conviction on a similar charge that he in fact knew what marijuana looked like and that thus it was more probable than not that he was in actual or constructive possession of the marijuana in question.

By the same token, the questions regarding the nature of defendant's prior conviction were admissible to impeach defendant upon a material issue in the case. Although

it is the general rule that a witness may not be impeached on a collateral issue, McCormick, Evidence § 47 (2d ed. 1972), the fact of defendant's knowledge of what marijuana looked like was not collateral to the question whether he was knowingly, and perforce unlawfully, in possession of the marijuana, for if the jury believed defendant's testimony that he did not know what marijuana looked like, presumably it would have had to acquit him. Defendant's denial on direct examination that he did not know that marijuana was present in the apartment opened to challenge the truthfulness of that denial. Inherent in that denial was the question whether defendant knew what marijuana looked like; consequently, it was incumbent upon the state to dispel from the jury's mind the possibility that defendant was unaware of what marijuana looked like and therefore was not knowingly in possession thereof. Assuming that the state could not have used the fact and nature of defendant's prior conviction to establish the fact of his knowledge of what marijuana looked like had defendant not taken the stand, the fact of his knowledge was no less material merely because it could not in those circumstances have been established out of defendant's own mouth.

Accordingly, I would hold that the trial court did not err in overruling defendant's objection to the state's inquiry into the nature of his 1968 felony conviction.

I am authorized to state that Chief Justice DUNN joins in this dissent.