[Crim. No. 27958. Second Dist., Div. Five. Apr. 24, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER WAYNE GOODSON, Defendant and Appellant.

**COUNSEL**

Joseph Shemaria for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Alexander W. Kirkpatrick, Frederick R. Millar, Jr., and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant appeals from the judgment entered following a jury trial that resulted in his conviction for oral copulation (Pen. Code, § 288a) and kidnaping (Pen. Code, § 207). He was sentenced to state prison for the term prescribed by law. He contends: "I. Testimony concerning the prior uncharged sexual assault upon Muhtadi [S.] was erroneously admitted into evidence. II. The trial court abused its discretion in denying appellant's application for probation. III. The trial court erred in failing to state reasons for denying appellant's application for probation."

Viewed in the light most favorable to the judgment the evidence established that on September 19, 1974, at 9:30 p.m. Virginia D. received a phone call from appellant who stated that he had been given her number by a mutual friend and wished to see her. She gave him her address and, because her car was inoperable, asked him to drive her to the USC Medical Center where she was employed as a nurse's assistant on the shift beginning at 11 p.m. Appellant arrived shortly thereafter introducing himself as "Jackie" and Ms. D. entered the car carrying her uniform in a bag.

The two drove to a restaurant at Ms. D.'s request. While there appellant made several phone calls and became agitated. His sudden change in manner, screaming epithets over the phone, frightened Ms. D. She grew apprehensive that "he had something up his sleeve."

According to her testimony Ms. D. balked at reentering appellant's car whereupon he grabbed both her arm and her purse and threatened her, telling her "he had called a couple of the guys and if I didn't do what he said, they were all going to rape me." Ms. D. entered the car because she was in fear and because appellant promised to take her to work.

Appellant, however, drove off in the wrong direction, parked the car in a dark isolated area, and tried to tear off Ms. D.'s clothes. In the words of the victim, "he told me I either have a choice, I either had to fuck him or else I had to give him some head, and if I didn't do either, all of his friends were on the way and they were all going to get me." He then exposed his penis and forced her to commit an act of oral copulation against her will.

Appellant subsequently drove Ms. D. to her place of employment, stopping across the street. Ms. D. testified that there "[h]e grabbed my purse and told me since I didn't fuck him, he was going to take my money." Appellant removed $10 from the victim's wallet before handing it back to her. Ms. D. hastily threw her uniform on over her clothes, exited the car, and managed to write down appellant's license number before he drove off.

Evidence was admitted over appellant's objection of a prior offense for which he was never prosecuted. Some time in August 1972 appellant called Ms. Muhtadi S., introduced himself as "Jackie," and told her that he had been given her phone number by a mutual friend. They had two pleasant uneventful dates.

On August 9, 1972, Ms. S. agreed to go with appellant to the Lighthouse to hear a jazz musician and appellant picked her up at her home in his car accompanied by a man identified as Poole. When they arrived at the club appellant was refused entrance through the back door by an employee. A commotion ensued during which appellant "was loaded and yelling and swearing." Ms. S. became alarmed by his abnormal behavior and attempted to leave by herself whereupon appellant and Poole forced her into the car and drove off.

When they parked Ms. S. screamed and appellant threatened to kill her if she didn't shut up. They then drove to another secluded location and appellant ordered her, "Either screw me or let me eat you or go down on me, give me head." Appellant clutched at the hysterical victim's clothes in an attempt to disrobe her. He pushed her head down onto Poole and forced her to orally copulate Poole. He then forced her to perform the same act upon himself as Poole attempted to have intercourse with her from behind. Ms. S. choked and threw up. Eventually appellant drove off with her in the car warning her to keep quiet about the incident.

Shortly thereafter the vehicle was stopped by the police for some unspecified reason and Ms. S. told them of the attack. She also noticed that her wallet was missing from her purse. When the police retrieved the wallet from the back seat she discovered that $28 and change were missing.

Appellant testified in his own defense stating that he had met Ms. S. once in 1972 at a public festival and that they had been accompanied by

a friend named Robert Poole. He denied assaulting her at any time. He further testified that on September 19, 1974, he had been approached by Ms. D., hitherto unknown to him, in a gas station and had agreed to give her a ride to work. He denied that any sexual act had taken place between them.

■ The trial court did not err when it admitted evidence of the similar uncharged offense committed in 1972 against Ms. S. As defense counsel stated at trial, "[t]he defense would be that in fact the act of a criminal nature that the witness had testified to didn't take place. So I would unequivocally state that neither identification or intent of any kind, specific or general is at all in issue . . . ." The pivotal question in the instant case was the credibility of Ms. D. and evidence of the uncharged offense against Ms. S. was relevant to corroborate the earlier testimony of Ms. D.

■ "It is settled that evidence of other crimes is ordinarily admissible where it tends to show presence of a common design, plan, or modus operandi, and this rule applies to sex offenses committed with persons other than the prosecuting witness where the offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness. [Citations.]" (*People* v. *Pierce* (1970) 11 Cal.App.3d 313, 322 [89 Cal.Rptr. 751].)

■ The prior 1972 crime committed against Ms. S. had several distinctive marks in common with those charged in the present proceeding. In each instance appellant introduced himself by phone to the woman using the pseudonym "Jackie" and claiming that he had been given the number by a mutual male friend. In each case he picked up the woman by car at her home. Both women became apprehensive after noting a sudden change in appellant's behavior triggered by some external incident. The attacks took place in appellant's car and followed a similar pattern. Appellant tried to tear off each victim's clothing and offered her a choice between sexual intercourse with him and oral copulation. When each woman refused to participate he forced her into orally copulating him. Thereafter appellant drove off with his victim in the car, ostensibly to return her to her destination. In each attack, appellant took the money from the victim's purse but returned the purse itself.

The trial court here did not abuse its discretion when it admitted testimony of the prior offense. As recognized in *People* v. *Thomas* (1978)

20 Cal.3d 457, 464 [143 Cal.Rptr. 215, 573 P.2d 433]: "As a general rule, evidence that the defendant committed other crimes is inadmissible if offered solely to prove a criminal disposition on defendant's part. . . .

"There do exist, however, several exceptions to the general rule which are applicable in those instances in which the evidence of other crimes is relevant to prove some fact at issue other than the mere general disposition to commit such acts. As expressed in *Kelley* [*People* v. *Kelley* (1967) 66 Cal.2d 232 (57 Cal.Rptr. 363, 424 P.2d 947)], 'It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan.' (66 Cal.2d at p. 239; see *People* v. *Cramer, supra,* 67 Cal.2d at p. 129 (60 Cal.Rptr. 230, 429 P.2d 582) [exception where there is a 'common design, plan, or *modus operandi*']; *People* v. *Ing* (1967) 65 Cal.2d 603 [55 Cal.Rptr. 920, 422 P.2d 590] ['common scheme or plan to commit rape']; Evid. Code, § 1101, subd. (b) ['motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'].)"

*Thomas* proceeds to analyze the common design or plan exception and, without repetition, suffice it to say the facts of this case fit glove-like within the exception. The nine points of similarity, as recited in the facts, and the prior crime not being remote in time, the evidence was admissible. The result of the admission of such evidence is, in part, to corroborate the victim's testimony. This result is not disapproved by *Thomas* where the evidence is otherwise admissible.

Ms. S.'s testimony was justified to buttress the credibility of the prosecution witness.

■ Appellant's last two contentions are equally meritless. "Granting or denying probation rests in the sound discretion of the trial judge, and a heavy burden is imposed upon a defendant to show abuse of that discretion in denying a request for probation." (*People* v. *Kingston* (1974) 44 Cal.App.3d 629, 637 [118 Cal.Rptr. 896].) In the present instance the trial court made clear that it had read and considered every report submitted, including those of the probation officer, the psychiatric consultants, and the California Department of Corrections. The court pointed out that appellant had not only committed perjury at trial but had apparently given several different distorted versions of his activities to the personnel involved in evaluating his behavior. In rejecting their conclusion the trial judge commented, "the persons involved like Mr.

Smoot, the probation officer, who didn't know and didn't bother to check, and the psychiatrist and the other people at the state prison who Mr. Goodson has spoken to have been under the impression the only thing Mr. Goodson ever had anything to do with was with Miss [D]."

He added, "I find it inconceivable that a prison doctor would take the view that he was not—that he was not aggressive toward women in view of the testimony at the trial from Miss [S]. I find it inconceivable. Even if the doctor was not aware of that testimony, if Mr. Goodson explained it to him . . . ."

The court summarized its reasons for denying probation, stating, "Mr. Goodson is and has been an accomplished con man. He is also dangerous to women . . . and must be isolated."

We note that the minute order judgment in the clerk's transcript does not correctly reflect the judgment as pronounced by the trial court. Accordingly it is modified to provide that the sentence imposed in count II is stayed, such stay to become permanent upon completion by appellant of his sentence in count I.

As so modified the judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 22, 1978.