STATE of South Dakota, Plaintiff
and Appellant,

v.

Steven Ellis HOUGHTON, Defendant
and Respondent.

No. 12415.

Supreme Court of South Dakota.

Submitted on Briefs Sept. 14, 1978.

Opinion, Dec. 19, 1978.

Charles L. Dorothy, Asst. Minnehaha County State's Atty., Sioux Falls, for plaintiff and appellant.

Laird Rasmussen of Dana, Golden, Moore & Rasmussen, Sioux Falls, for defendant and respondent.

DUNN, Justice.

This case involves an appeal[1] from an intermediate order of the trial court ruling that collateral evidence of other alleged rapes would not be admissible in the present rape prosecution. We affirm.

On June 17, 1977, defendant Houghton was charged by indictment with the rape[2] of one B. S. On January 4, 1978, the trial court held a hearing on the state's motion for a pre-trial ruling as to the admissibility

1. Pursuant to SDCL 15–26–18.

2. In accordance with SDCL 22–22–1.

of evidence of prior rapes in order to show identity as well as intent, scheme, plan, and modus operandi. During this hearing, the trial court relied upon the testimony given at a December 8, 1977 pre-trial hearing in connection with another rape charge also handed down by indictment on June 17, 1977, in which defendant allegedly raped one C. M. The December 8, 1977 hearing involved the same motion for an evidentiary ruling as requested above in the present case; the state sought a ruling permitting the introduction at the C. M. rape trial of evidence involving the alleged B. S. rape and an additional alleged but uncharged rape of one L. F. At that time, the trial court heard from the alleged victim L. F. and her mother, alleged victims C. M. and B. S., and the police officer who arrested defendant. After hearing the testimony, the trial judge found that the evidence of other alleged rapes was relevant but entirely too prejudicial and therefore not admissible. More specifically, the trial judge found as follows:

"[I]t is the finding of this Court that one, the buying of drinks; two, demanding of sex with him; and three, the becoming violent and use of threats upon refusal are not unique, but are rather common and usual traits of a forcible rape. However, it is the finding of this Court that the following, one, the talking to the persons involved concerning his wealth and money; two, the asking of the women to see his unusual pet at his apartment; three, the derogatory language used during the act of intercourse; four, the holding and grasping of the women's wrists prior to the act of intercourse; five, the striking of the women who used the bathroom immediately upon leaving the bathroom; and six, the becoming apologetic after intercourse and allowing or assisting the women after intercourse to leave, are of sufficient character and uniqueness that stamp the incident to the same extent as one court stated, as a signature. I therefore find that it is relevant to show design, plan, scheme or modus operandi. However, the admission of such offenses, that is, the other offenses evi-

dence, is essentially a matter directed to the sound discretion of the Court; that that discretion must be exercised within the context of the fundamental rule that the relevant evidence must be weighed in connection with its prejudicial effect. That is, if the probative value is outweighed by its prejudicial effect it should not be admitted. The purpose of the hearing that we had yesterday morning was to determine the admissibility of the prior and the subsequent alleged rapes. In the State's case in chief, in that connection, it makes the defendant in this case defend against not only the alleged uncharged rape prior to, but also the alleged charged rape subsequent to the one with which the defendant is charged. It is, therefore, the ruling of this Court that the prejudicial effect of the alleged uncharged prior rape and the alleged charged rape subsequent to (it) is prejudicial to the defendant and therefore, it is the ruling of this Court that the admissibility of the alleged uncharged rape prior to the incident with which the defendant is charged and the one subsequent thereto will not be admitted in the State's case in chief."

The state requested "a ruling whether or not the other rapes would be admissible in the [B.S.] rape case when it comes to trial." The trial judge deferred such ruling.

On December 12–14, 1977, the issue of defendant's alleged rape of C. M. was tried before a jury. The jury acquitted defendant of the charged and alleged rape of C. M.

The January 4, 1978 hearing on the admissibility of evidence of other alleged rapes in the present action resulted in a ruling similar to that of December 8, 1977. The trial judge incorporated his previous ruling and adopted the findings quoted above. The state asked for a ruling as to the probative value of the testimony of the other alleged rape victims regarding the identity of the assailant. The trial judge declined to so rule because he found that identity was not in issue.

On January 20, 1978, the state filed its petition for allowance of appeal and notice

of appeal from an intermediate order. We granted the appeal on February 7, 1978, and the record was settled and certified on February 22, 1978.

The state contends that the trial court erred in excluding the testimony of the other two alleged rape victims after finding that all three women were purportedly raped in a fashion so similar as to be "the signature" of the defendant and that the evidence was relevant to prove scheme, plan, intent, and modus operandi. Accordingly, the sole issue on appeal is whether the trial court abused its discretion in ruling that evidence of other alleged rapes by defendant would not be admissible in the present action.

■ It has long been established in this state that proof that a defendant has committed other crimes and offenses is incompetent and inadmissible for the purpose of showing the commission of the crime charged; however, when evidence of prior conduct of a defendant establishes a material fact which is at issue, such conduct may be admissible notwithstanding the fact that the prior conduct is criminal and constitutes an offense independent of the crime charged.[3] Such material facts include identity, knowledge, intent or malice, motive, acts which are part of a plan or system of criminal action and acts constituting continuous offenses.[4] This common law rule has been substantially embodied in the South Dakota Rules of Evidence,[5] Rule 404(b) as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ The principal reason for this general rule of exclusion is the prejudice against the accused that evidence of other crimes instills in the jury and not because of an inherent lack of probative value.[6] This reason is more fully discussed as follows:

"The notion of prejudice encompasses two distinct tendencies of jurors. The first is the tendency to convict a man of the crime charged, not because he is guilty of that offense, but because evidence introduced indicates that he had committed another unpunished crime or that he is a 'bad man' who should be incarcerated regardless of his present guilt. A conviction for this reason would violate the principle that a man may be punished only for those acts with which he has been charged. The second is the tendency to infer that because the accused committed one crime, he committed the crime charged. In many instances this inference rests on no greater foundation than the belief that commission of one crime indicates a propensity to commit others. * * * Recognizing both these jury tendencies, American courts have generally excluded other crimes evidence which

3. *State v. Johnson*, 1977, S.D., 254 N.W.2d 114; *State v. Furlow*, 1977, S.D., 260 N.W.2d 631; *State v. Nelsen*, 1975, S.D., 228 N.W.2d 143; *State v. Keeling*, 1975, S.D., 233 N.W.2d 586; *State v. Pickering*, 1974, 88 S.D. 230, 217 N.W.2d 877; *State v. Long*, 1971, 85 S.D. 431, 185 N.W.2d 472; *State v. Blake*, 1968, 83 S.D. 359, 159 N.W.2d 803; *State v. McCreary*, 1966, 82 S.D. 111, 142 N.W.2d 240; *State v. Norman*, 1948, 72 S.D. 168, 31 N.W.2d 258; *State v. Bachelor*, 1940, 67 S.D. 259, 291 N.W. 738; *State v. Nesbeth*, 1937, 65 S.D. 613, 277 N.W. 36; *State v. Wolfe*, 1936, 64 S.D. 178, 266 N.W. 116; *State v. Degner*, 1932, 59 S.D. 539, 241 N.W. 515.

4. See note 3, supra.

5. The South Dakota Rules of Evidence became effective as of July 1, 1978, and apply to this case as it was in progress on the effective date.

6. Slough & Knightly, "Other Vices, Other Crimes," 41 Iowa L.Rev. 325 (1956). See Advisory Committee's Note relating to Federal Rule of Evidence 404 which quotes as follows:

 " 'Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.' "

proves no more than 'criminal disposition' or 'criminal character,' reasoning that the possibility of inflaming jury sentiments outweighs the limited relevance of such evidence." [7]

■ While the rule excludes other crimes evidence showing bad character and propensity to commit crime in conformity therewith, it enumerates certain exceptions where such evidence may be admitted to establish an element of the crime charged and prove a material fact which is at issue. Even if the court finds that the other crimes evidence has probative value as an exception to the rule of exclusion, admission of such evidence is not automatic because the rule states that such evidence *may* be admissible.[8] The standard that the trial court must use in determining the admissibility of such evidence is set out in South Dakota Rules of Evidence, Rule 403:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The question of balancing the probative value against the risk of unfair prejudice and the other Rule 403 considerations is one for the trial judge to resolve in the sound exercise of discretion.[9] With regard to our review of the exercise of that discretion, we must determine whether there has been an abuse of discretion.[10]

The state contends that the evidence of other alleged rapes should be deemed admissible in the present case because the trial judge found it to be relevant to prove identity, scheme, plan, intent, and modus operandi. A mere finding of relevancy does not automatically result in admissibility.[11] When viewing these exceptions to the general rule of exclusion, we must remember that they

"are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names. To the contrary, each exception has been carefully carved out of the general rule to serve a limited judicial and prosecutorial purpose." [12]

■ The evidence of other alleged rapes cannot be deemed to be admissible because it shows intent for the reason that intent is simply not one of the elements of the crime charged. With regard to design, scheme, or plan, courts have admitted other crimes evi-

---

7. Comment, "Other Crimes Evidence at Trial: Of Balancing and Other Matters," 70 Yale L.J. 763, 763–764 (1961). This reasoning is further expressed as follows:

"[E]vidence of prior convictions must be received with caution, for such evidence 'not only permits the prosecutor to throw doubt upon the defendant's testimony regarding the facts of the case being tried, but also may result in casting such an atmosphere of aspersion and disrepute about the defendant as to convince the jury that he is an habitual lawbreaker who should be punished and confined for the general good of the community.'" 10 Moore's Federal Practice, Federal Rules of Evidence, § 404.21[1] (2nd Ed. 1976), quoting from *Pinkney v. United States*, 1966, 124 U.S.App.D.C. 209, 211, 363 F.2d 696, 698.

8. Weinstein & Berger, Weinstein's Evidence, Vol. 2, ¶ 404[10], p. 404–66.

9. Louisell & Mueller, Federal Evidence, Vol. 2, § 140 (1978). See also, *State v. McDaniel*, 1978, Iowa, 265 N.W.2d 917; *People v. Wilkins*, 1978, 82 Mich.App. 260, 266 N.W.2d 781; *State v. Johnson*, 1977, Minn., 256 N.W.2d 280; *United States v. Czarnecki*, 1977, 6 Cir., 552 F.2d

698; *United States v. Bledsoe*, 1976, 8 Cir., 531 F.2d 888; *Cunha v. Brewer*, 1975, 8 Cir., 511 F.2d 894; McCormick, Evidence, § 190, pp. 452–454 (2nd Ed. 1972); 10 Moore's Federal Practice, Federal Rules of Evidence, § 404.-21[2], pp. 111–114 (2nd Ed. 1976).

10. *Myron v. Coil*, 1966, 82 S.D. 180, 143 N.W.2d 738; *Davis v. Kressly*, 1961, 78 S.D. 637, 107 N.W.2d 5; *Slagle & Co. v. Bushnell*, 1944, 70 S.D. 250, 16 N.W.2d 914. See also, 5A C.J.S. Appeal and Error § 1583a, p. 24ff.

11. As one court observed, "the trial judge should, in an exercise of sound discretion, exclude evidence tending to show the commission of other crimes 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" *United States v. Kahaner*, 1963, 2 Cir., 317 F.2d 459, 471–472, cert. den. 1963, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65.

12. *United States v. Goodwin*, 1974, 5 Cir., 492 F.2d 1141, 1155. See also, *United States v. Burkhart*, 1972, 10 Cir., 458 F.2d 201, 204.

dence to show a plan on the part of the defendant to commit the specific crime with which he is charged, but they have not admitted such evidence to show a plan to commit crimes of the sort with which he is charged.[13] There is no showing that commission of prior alleged rapes established a particular preconceived plan from which the alleged rape in this case was a necessary result.[14]

■ The state argues that the alleged rapes have a common modus operandi which makes the evidence of other alleged rapes admissible on the question of identity. This would, perhaps, be true if identity were in issue; however, there is a strong indication that the purported victim in this case knows the defendant, can clearly identify him when she has her eyeglasses on, and will presumably identify him at trial.[15] The fact that the alleged rapes were committed in a similar, unique manner sufficient enough to be like a "signature" is of little consequence in this case because the question is not "who raped the purported victim?" but "did defendant's actions constitute rape?"[16] Under these circumstances, we find that the evidence of other alleged rapes would merely show that defendant had a bad character and was likely to commit bad acts in conformity therewith. This has been clearly proscribed for many years and has been restated in our new rules of evidence.[17]

The same so-called pattern of defendant was present in all three cases up until the time the victims were enticed to his living quarters to see his strange pet. All of the girls indicated that their actions to this point were voluntary. Thus the only issue in question was the amount of force used and the extent of resistance by the victims in each individual case. The jury heard the evidence in the alleged rape of C. M. and found a lack of force on the part of defendant and resistance on the part of the victim which would constitute rape under the instructions given to it. But it should be noted that the so-called modus operandi of defendant after reaching his living quarters varied in the alleged rape of C. M. from that alleged in the present case and in the uncharged alleged rape of L. F. In the alleged rape of C. M., where defendant was tried and acquitted, there was an alleged threat of physical harm but no actual violence beyond the holding of the arms. In

---

**13.** *United States v. Goodwin*, 1974, 5 Cir., 492 F.2d 1141, 1152–1153.

**14.** The alleged rape in this case "was not of the sort, like a stock swindling scheme or murder for insurance, where the commission of other crimes may tend to establish a plan from which the crime charged can be said to have resulted." *Lovely v. United States*, 1948, 4 Cir., 169 F.2d 386, 388.

**15.** At the hearing on the pre-trial motion, the purported victim testified upon direct examination as follows:

"Q Do you know a Mr. Steven Houghton?
"A Yes.
"Q Is he in the courtroom today?
"A No.
"Q How do you know a Mr. Steven Houghton?
"A Wait a minute. I don't have my glasses on and I don't see well without my glasses and they're broke.
"Q Would it assist you if you got up and looked around the courtroom?
"A I'd have to come awful close because I don't see good without my glasses.
"Q All right. Let me ask you this: You seem to be familiar with the name Steven

Houghton. Why are you familiar with that name?
"A From a night when I had met him and he had told me his name and—

\* \* \* \* \* \*

"Q How did you know that this man was Steven Houghton?
"A Because he kept telling me who he was.
"Q And what did he look like?
"A He was tall; he has dark hair and very thick glasses.
"MR. DOROTHY: Your Honor, let the record reflect that the gentleman sitting next to Laird Rasmussen is tall, has dark hair and thick glasses.
"THE COURT: The record may so show."

**16.** In fact, the record shows that, in the trial of the other charged rape in which the defendant was acquitted, the defendant openly admitted that he had sexual intercourse with the woman in his apartment on the night charged but that he used no force or threats because she fully consented.

**17.** South Dakota Rules of Evidence, Rule 404(b).

the other two cases in which the state wishes to present evidence to show a pattern, the victims were allegedly struck violently—one to the extent that she was knocked to the floor, and the other so violently that the victim was unconscious for a time and has no recollection of how she reached the bedroom or how her clothing was removed.

This evidence of violent conduct, if believed by a jury, would leave little doubt that defendant intended to use all of the force necessary to accomplish his purpose, and that any further resistance on the part of the victims would not only be futile but dangerous. Thus the state should proceed to present the considerable evidence available in the present case without attempting to inject prejudicial testimony of other activities of defendant.

Therefore, upon a complete review of the pre-trial record before us, we can see no justified reason under our new rules of evidence which would render the evidence of alleged rapes—one acquitted and one uncharged—admissible. Accordingly, the trial judge did not abuse his discretion in balancing the probative value of the evidence against the risk of unfair prejudice and concluding that the latter predominated.

The order of the trial court is affirmed.

ZASTROW, PORTER and MORGAN, JJ., concur.

WOLLMAN, C. J., dissents.

1. The state's evidence, which I do not understand the defendant to contradict in any substantial way, established the following incidents:

### L. F. RAPE

On March 17, 1977, L. F. accepted a dinner invitation from defendant. During supper and drinks, defendant discussed his considerable wealth. After supper and drinks, defendant asked L. F. if she would like to go to his house to see his special white dog. After L. F. stated that she would enjoy seeing the dog, defendant took her to his house.

Upon entering the house, L. F. excused herself to go to the bathroom. When she returned from the bathroom, she saw defendant standing nude in the hallway. When L.

WOLLMAN, Chief Justice (dissenting).

I would hold that the trial court erred in ruling that evidence of other alleged rapes would not be admissible in the present rape prosecution.

I need not belabor the point that evidence of the kind excluded here has long been recognized as admissible in a proper case, for the majority opinion establishes that fact beyond question. I would merely point to several cases that have specifically held that evidence of prior conduct is admissible in sex related offenses. See, e.g., *United States v. Oliver*, 8 Cir., 525 F.2d 731; *Umbaugh v. Hutto*, 8 Cir., 486 F.2d 904; *People v. Thomas*, 143 Cal.Rptr. 215, 573 P.2d 433 (recognizing the principal of admissibility but holding the proffered evidence inadmissible because of its remoteness); *People v. Ing*, 55 Cal. Rptr. 902, 422 P.2d 590; *People v. Goodson*, 80 Cal.App.3d 290, 145 Cal.Rptr. 489; *People v. Sullivan*, 96 Cal.App.2d 742, 216 P.2d 558; *People v. Middleton*, 38 Ill. App.3d 984, 350 N.E.2d 223. See generally *United States v. Drury*, 8 Cir., 582 F.2d 1181; *United States v. Maestas*, 8 Cir., 554 F.2d 834; *United States v. Jardan*, 8 Cir., 552 F.2d 216.

Under the principles discussed in the above cited cases and in those cases referred to in the majority opinion, I would hold that the proffered evidence is admissible under Rule 404(b) of the South Dakota Rules of Evidence to establish, at the vary least, proof of motive, opportunity, intent, preparation and plan.[1] I cannot agree that

F. attempted to flee, defendant struck her on the head, causing unconsciousness. The next thing L. F. remembers after the blow was being on the bed without any clothes. Her clothes were not torn. Defendant held L. F. down on the bed and asked her to suck his rectum. When she refused, defendant slapped her across to face, grasped both of her arms by the wrists and entered her vagina with his penis. During intercourse, defendant methodicly slapped L. F. and exclaimed "bitch" and "whore" and other similar words.

After intercourse, defendant offered L. F. a ride home and allowed her to leave after she refused the assistance. Later defendant became apologetic.

intent is simply not one of the elements of the crime charged. The indictment charged that defendant had accomplished "an act of sexual penetration . . . through the use of force, coercion, or threats of immediate and great bodily harm against the victim, accompanied by apparent power of execution . . . ." Although there is no requirement in SDCL 22–22–1 of a specific intent to commit the crime of rape, the intent to accomplish the act of sexual penetration against the victim's will is inherently a part of the offense charged, for it negates the defense of consent.

However debatable one might consider the admissibility of the proffered evidence with respect to the element of intent, there can be little question concerning its admissibility with respect to proof of opportunity, preparation, and plan. In light of the circumstances surrounding the other instances, it hardly seems open to question that the evidence of the prior alleged rapes established the fact of defendant's careful, deliberate preparation to carry out his preconceived plan whereby he would lure the victims to his home, thereby giving him the opportunity to carry out his intent to have sexual relations (if one can call it that) with the victims against their will.

I recognize full well that rulings on the admissibility of evidence must of necessity be committed largely to the sound discretion of the trial court.[2] The discretionary

---

C. M. RAPE

On May 22, 1977, C. M. accepted a dance invitation from defendant at the Mocamba Club. After several dances and some conversation and drinks with defendant, C. M. began making plans with her female companion to have coffee. Defendant invited himself along and insisted that the three of them go in his vehicle.

After coffee, defendant took C. M.'s companion home and began driving north on Minnesota Avenue toward the Mocamba Club when he asked C. M. if she minded if he checked on his white "spitz" dog, which was at his house on the way to the Mocamba Club. After C. M. indicated she would not mind if he checked on his dog, defendant drove toward his house. He told C. M. of his considerable wealth.

Once at the house, defendant asked C. M. if she would like to come in to see the dog. After C. M. indicated she would like to see the dog, defendant took her into the house.

Once in the house, defendant went into the back room and C. M. sat on the couch. Defendant returned, sat down with C. M., and kissed her several times before trying to unbutton her blouse. When she resisted, defendant became violent. He grabbed C. M. by the throat, threatened to kill her and break her arm if she didn't have intercourse with him, hit her in the face, took her clothes off in such a manner that they were not torn, dragged her into the bedroom and forced her to have intercourse with him. During this time, defendant held both of C. M.'s arms by the wrists. During intercourse he exclaimed "whore" and "pig."

After intercourse, defendant apologized and offered to give C. M. a ride to her car.

B. S. RAPE

On June 16 1977, B. S. accepted an offer from defendant to have him buy her a drink at Shannon O'Neill's Village. After a drink and some conversation about his considerable wealth, defendant asked B. S. if she would like to see his pet white fox. After B. S. indicated that she would like to see the animal, defendant took her to his house. Once in the house, B. S. excused herself to go to the bathroom. When she returned from the bathroom, she found defendant standing in the hallway. He demanded that she be his whore and have sex with him. When she refused, defendant became violent, struck her, threatened to physically harm her, took her clothes off in such a manner that they would not be torn, dragged her into the bedroom where he forced her to have oral and vaginal intercourse with him. During intercourse defendant held B. S. arms by the wrists, slapped her, and exclaimed "cunt," "whore," "bitch," and "pig."

After intercourse, defendant allowed B. S. to leave.

Although B. S. was unable to identify defendant in the courtroom on December 8, 1977, she testified as to the description of the man who forced her to have intercourse with him and she related that his name was Steve Houghton.

---

2. For a singularly down-to-earth, practical review of the concept of trial court discretion, see M. Rosenberg, "Appellate Review of Trial Court Discretion," 79 F.R D. 173 (1978). The concluding paragraph of Professor Rosenberg's article is worth repeating here:

Discretion is an unruly concept in a judicial system dedicated to the rule of law, but it can be useful if it is domesticated, understood, and explained. To tame the concept requires no less than to force ourselves to say *why* it is accorded or withheld, and to say so in a manner that provides assurance for today's case and some guidance for tomorrow's. 79 F.R.D. at 185.

ruling of an able, experienced trial judge is not lightly to be overturned, but in this case I would do so, for I believe that the trial court applied the wrong standard in excluding the proffered evidence. Rule 403 of the South Dakota Rules of Evidence provides in part that "Although relevant, evidence *may* be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice . . ." (emphasis supplied) As the majority opinion points out, the trial court found that the evidence in question was relevant but concluded that the probative value of the evidence was outweighed by its prejudicial effect. I would hold that Rule 403, when read in the context of Rule 402, which provides that "All relevant evidence is admissible, except as otherwise provided . . .," requires a more specific balancing of the prejudicial effect of the evidence against its probative value than that made by the trial court here. Presumably, all relevant evidence is prejudicial, but before it may be excluded its probative value must be substantially outweighed by the danger of unfair prejudice. In the context of the present factual setting, I would hold that the balance tips in favor of the admissibility of the evidence.

I would reverse the order appealed from.